### S97A0062. FELKER v. LUKEMIRE et al.
(477 SE2d 23)

THOMPSON, Justice.

On September 26, 1995, August F. Siemon, an attorney representing Ellis Wayne Felker,[1] a death row inmate, sent a letter request to the District Attorney of Houston County pursuant to the Georgia Open Records Act ("ORA," OCGA § 50-18-70 et seq.). In that letter, Siemon requested the opportunity to view and copy all records pertaining to Felker's case, as well as the files of Patricia Woods and Michael Woods. The district attorney made a box of records available and it was perused by Donna Harris, Siemon's investigator.

On March 28, 1996, Siemon again wrote to the district attorney requesting another opportunity to view and copy the files of Felker, Patricia Woods and Michael Woods. In that letter, Siemon also requested access to the files of George Gignilliat, Joyce Swingley King, and Gary Edward Spurr. The next day, the district attorney responded by letter which reads, in part: "Ms. Harris came to my office some time in the fall of last year and spent the better part of the day with complete access to the Felker file. She took notes as she reviewed and had every opportunity to ask for copies of whatever she wanted, but she did not do so. For some time we heard nothing concerning this matter; only within the past four to six weeks was contact with our office renewed. . . . As to your current request, it is not clear whether you want us to proceed with copying all of the files referred to or whether you would first like for Ms. Harris to review

---

[1] Felker was convicted and sentenced to death for the murder of Joy Ludlam. See *Felker v. State,* 252 Ga. 351 (314 SE2d 621) (1984).

them and then request some of the material. Nevertheless, because time is becoming a factor for you, I am not going to wait for further clarification; I have instructed that copying begin on the files you have requested. . . . If you have any questions or wish to more specifically set the parameters for copying, please let me know."

Twelve days later, the district attorney informed Siemon that copying of the file had been completed and that the copies could be retrieved upon the payment of costs. Siemon did not respond to the district attorney's letters. Nevertheless, on April 30, 1996, Felker filed suit, pursuant to OCGA § 50-18-73, alleging that the district attorney failed to disclose video or audio tapes of hypnosis sessions of witnesses and the autopsy of Joy Ludlam. In his concluding prayer for relief, Felker sought the tapes, an order requiring the district attorney to comply with his ORA request, and attorney fees.

The district attorney responded to the suit by informing Felker's attorneys once again that they were free to inspect the files and copy what they needed. Felker's attorneys did not, however, take that opportunity. Accordingly, the district attorney filed an answer to the suit and the issues were joined.

Thereafter, the trial court issued a death warrant, and Felker's execution was scheduled for September 10, 1996. Because the trial court would not set the ORA case down for a hearing, Felker sought mandamus in this Court. We transmitted the case to the trial court on September 6, 1996, for consideration of the mandamus as if it had been filed in that court. The trial court obviated the need for a mandamus hearing by scheduling a hearing in the ORA case on September 8. Fifteen minutes before the hearing began, the district attorney produced a box of material which had not been seen by Felker previously. That box, which was clearly marked "Felker," had been located in an office storage area. The next day, September 9, the trial court granted a 48-hour stay of execution, noting that it would be unfair to continue the proceedings without giving Felker time to look through the box which had been disclosed the previous day. On September 10, Felker was informed that still more materials had been discovered and another 48-hour stay of execution was granted.

At the hearing which resumed on September 12, six witnesses from the Attorney General's office testified that they spent the previous day and night examining the files of the district attorney and that they uncovered yet another box of evidence. These witnesses added, however, that they were not asked to look for any files which were marked with anything other than "Felker." All told, the district attorney produced four boxes of materials (in addition to the first box which had been produced before the complaint was filed).

The September 12 hearing went late into the night and the trial court announced its intention to finish it. Felker asked for a continu-

ance to process the documents and materials produced by the district attorney and to find, subpoena and present additional witnesses. The trial court refused and entered a final order denying Felker the relief he sought. Felker appealed to this Court.

On September 13, 1996, this Court remanded the case for findings of fact and conclusions of law.[2] The trial court entered written findings and conclusions, concluding, inter alia, that the district attorney complied with Felker's ORA request. Felker appealed again.

1. Felker asserts he was denied a full and fair opportunity to litigate this case. In this regard, he contends he was not given adequate time to prepare and proceed in view of the trial court's pressing time schedule. More specifically, he argues that he was not afforded an opportunity to locate and depose or subpoena key witnesses, or to examine the contents of the newly produced boxes. We disagree. When Felker filed this suit on April 30, 1996, he demanded an emergency evidentiary hearing. One month later, he reiterated his request for an expedited hearing. Thus, Felker could and should have begun preparing for the hearing months before it took place. It cannot be said that he was deprived of the opportunity to find and call witnesses on his behalf. As for the boxes, Felker does not now contend that anything he would have found therein would have led him to proceed differently. The trial court did not foreclose Felker's right to a full and fair hearing. See generally *Regency Club v. Stuckey*, 253 Ga. 583, 586 (324 SE2d 166) (1984); *Jacobs v. Hopper*, 238 Ga. 461, 462-463 (233 SE2d 169) (1977).

2. Felker contends that the district attorney failed to comply with his ORA request because (1) only one box of Felker file material was produced before the filing of this suit; and (2) the district attorney made no attempt to locate materials sought by Felker of the other named individuals. We cannot accept this contention because it is predicated on the erroneous belief that a custodian of public records must himself locate, inspect and produce the documents sought by a citizen pursuant to an ORA request.

Unless otherwise exempted from production, a public citizen seeking documents pursuant to the Open Records Act is entitled to inspect and copy *all* of the documents requested. *Conklin v. Zant*, 263 Ga. 165 (430 SE2d 589) (1993). However, a thorough reading of the ORA makes it clear that the legislature did not intend for a custodian of public records to comb through his files in search of documents sought by a public citizen. To the contrary, all that is required of a public records custodian is that he provide reasonable *access* to the

---

[2] A 40-day stay of execution was granted.

files that are sought. See OCGA §§ 50-18-70 (b); 50-18-71 (a).[3] Thus, we hold that a custodian of public records complies with an ORA request when he grants reasonable access to the files in his custody. Were we to hold otherwise, a public records custodian would subject himself to an ORA suit every time he located and produced documents because a citizen could always speculate about the existence of additional documents. The legislature could not have intended for an ORA request to be used to trap an unsuspecting public official in this way.

In this case, the district attorney responded to Felker's ORA request by notifying him that the records would be made available for inspection and copying. In so doing, the district attorney fully complied with his obligations under the Act. And he had no reason to suspect that he did not comply. If Felker was not satisfied with the way in which the district attorney responded to his request, he should have so advised the district attorney and given him an opportunity to provide access to additional files. Cf. *GMS Air Conditioning v. Dept. of Human Resources*, 201 Ga. App. 136 (410 SE2d 341) (1991) (before filing suit, plaintiff complained by letter that DHR failed to provide the records it requested).

3. The trial court did not abuse its discretion in refusing to award attorney fees and expenses of litigation. *Richmond County Hosp. Auth. v. Southeastern Newspapers Corp.*, 252 Ga. 19 (311 SE2d 806) (1984).

*Judgment affirmed. All the Justices concur, except Fletcher, P. J., who concurs in the judgment only.*

---

[3] OCGA § 50-18-70 (b) provides:

All public records of an agency as defined in subsection (a), except those which by order of a court of this state or by law are prohibited or specifically exempted from being open to inspection by the general public, shall be open for a personal inspection by any citizen of this state at a reasonable time and place; and those in charge of such records shall not refuse this privilege to any citizen.

OCGA § 50-18-71 (a) reads:

In all cases where an interested member of the public has a right to inspect or take extracts or make copies from any public records, instruments, or documents, any such person shall have the right of access to the records, documents, or instruments for the purpose of making photographs or reproductions of the same while in the possession, custody, and control of the lawful custodian thereof, or his authorized deputy. Such work shall be done under the supervision of the lawful custodian of the records, who shall have the right to adopt and enforce reasonable rules governing the work. The work shall be done in the room where the records, documents, or instruments are kept by law. While the work is in progress, the custodian may charge the person making the photographs or reproductions of the records, documents, or instruments at a rate of compensation to be agreed upon by the person making the photographs and the custodian for his services or the services of a deputy in supervising the work.

DECIDED OCTOBER 30, 1996 —
RECONSIDERATION DENIED NOVEMBER 14, 1996.

*Stephen C. Bayliss, M. Elizabeth Wells, Michael Mears,* for appellant.

*Michael J. Bowers, Attorney General, John C. Jones, Senior Assistant Attorney General, Dee Brophy,* for appellees.