A05A0754. WALLACE v. GREENE COUNTY et al.
(618 SE2d 642)

BERNES, Judge.

Following his termination for misconduct as Greene County's Buildings and Grounds Maintenance Superintendent, appellant Dane C. Wallace filed his complaint seeking injunctive relief and damages against Greene County, County Manager Byron Lombard ("Lombard"), and County Attorney David C. Moss ("Moss") (collectively "appellees"). In his complaint, Wallace claimed that the appellees violated OCGA § 9-11-65 (b) by obtaining an ex parte temporary restraining order ("TRO") against him without notice, and that the appellees further violated the Georgia Open Records Act ("ORA") (OCGA § 50-18-70 et seq.) by failing to respond timely to his request for a copy of his personnel record. The appellees answered, denying the material allegations of the complaint, and thereafter moved for summary judgment. The trial court granted appellees' motion for summary judgment, from which Wallace appeals. We affirm in part and reverse in part.

> We review de novo a trial court's grant of summary judgment, construing the evidence in a light most favorable to the nonmoving party. *Talbot County Bd. of Commrs. v. Woodall*, 275 Ga. 281 (565 SE2d 465) (2002). To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the nonmovant's favor, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A defendant who will not bear the burden of proof at trial need only show an absence of evidence to support an essential element of the nonmoving party's case. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e). Id.

(Punctuation omitted.) *Latson v. Boaz*, 278 Ga. 113, 113-114 (598 SE2d 485) (2004).

The evidence of record reflects that Wallace previously was employed as Greene County's Buildings and Grounds Maintenance Superintendent. During the course of his employment, Wallace had a history of disciplinary problems. In October 2002, he was suspended for failing a drug test. In January 2003, he was suspended again for behaving belligerently with his supervisor. In February 2003, he was reprimanded for using profanity and making threatening gestures. Thereafter, in April 2003, Wallace was suspended following a physical altercation with another County employee.

Prior to the suspension, Lombard had learned from the County's 911 Director that Wallace made inappropriate and seemingly threatening comments during a January 27, 2003 conversation with the Director. The 911 Director also told Lombard that on February 18, 2003, other 911 employees stated that they were afraid of Wallace. One of the 911 employees told the 911 Director that Wallace had made comments about how easy it would be to take out Greene County by taking out the 911 Center. Several County employees stated that Wallace's behavior appeared to be erratic and unpredictable.

Lombard had also been advised by members of the County's Board of Commissioners that Wallace had made late night phone calls to their homes in which Wallace, who seemed to be intoxicated, rambled irrationally.

As a result of the information obtained from the County Commissioners and employees, Lombard asked Moss to obtain a TRO against Wallace. Moss averred that he contacted the judge's office to obtain a hearing date for the motion, but he was instructed by the judge to present a draft order after the circumstances were explained. Moss followed the judge's instructions, and the TRO was signed by the judge on April 7, 2003.

At a meeting with his supervisor on April 7, 2003, Wallace was informed of his suspension and two deputy sheriffs served him with the TRO. The deputies asked whether Wallace had any firearms in his possession, and he informed them that he had a 9 mm pistol and a .22 magnum pistol in a bag that he kept in his county vehicle. The .22 magnum pistol was not found in the truck, but the deputies took possession of the 9 mm pistol along with over 100 rounds of ammunition.

The next day, at the request of his wife and father-in-law, Wallace was taken into custody pursuant to an Order to Apprehend issued by a Greene County Probate Court judge, and was admitted to a psychiatric facility for a 72-hour evaluation.

On May 29, 2003, Wallace's counsel sent a written request to Lombard seeking copies of Wallace's personnel file. Neither Lombard nor anyone else on behalf of the County responded to the written request. Wallace's counsel did not follow up with the County, and

Wallace and his counsel never appeared at the County's offices to inspect the file. On September 29, 2003, after this lawsuit was commenced, the County mailed a copy of the personnel file to Wallace's counsel without charging or collecting a fee.

1. In his first enumeration of error, Wallace argues that the trial court erred in granting summary judgment to the appellees on his claim that they violated OCGA § 9-11-65 (b) when they obtained an ex parte TRO against him without providing him notice as the adverse party. Appellees admit that the TRO was issued without notice, but argue that Wallace is not entitled to the damages he requests in his complaint since appellees are immune from liability for the acts forming the basis of Wallace's claim. We agree.[1]

Appellee Greene County is entitled to sovereign immunity from damage claims pursuant to Art. I, Sec. II, Par. IX of the Georgia Constitution of 1983.[2] *Gilbert v. Richardson*, 264 Ga. 744, 746-747 (2) (452 SE2d 476) (1994). Moreover, because a suit brought against a county employee in his official capacity is in reality a suit against the county itself, sovereign immunity extends to county employees acting within their official capacities. See *Cameron v. Lang*, 274 Ga. 122, 126 (3) (549 SE2d 341) (2001); *Gilbert*, supra at 746, n. 4. Accordingly, Wallace's claim against Lombard and Moss in their official capacities is barred by sovereign immunity.[3]

---

[1] The appellees concede that the ex parte TRO in issue was entered without full compliance with OCGA § 9-11-65 because Moss did not file a verified complaint or affidavit. As such, the TRO was void and unenforceable. *Mar-Pak Michigan, Inc. v. Pointer*, 226 Ga. 189 (173 SE2d 206) (1970); *Finney v. Pan-American Fire & Cas. Co.*, 123 Ga. App. 250, 252 (3) (180 SE2d 253) (1971). Otherwise, the TRO expired by its terms within 30 days after its entry. See OCGA § 9-11-65 (b). Accordingly, to the extent that Wallace's complaint sought an injunction to prevent enforcement of the TRO, his claim for relief was moot.

[2] Sovereign immunity "can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e). See also Ga. Const. of 1983, Art. IX, Sec. II, Par. IX. The waiver of sovereign immunity afforded by the Georgia Tort Claims Act ("GTCA"), OCGA § 50-21-20 et seq., does not extend to a county. See OCGA § 50-21-22 (5). However, a county's sovereign immunity has been waived pursuant to OCGA § 33-24-51 (b), to the extent of the amount of liability insurance purchased for claims arising from the use of a motor vehicle. See *Harry v. Glenn County*, 269 Ga. 503, 504 (1) (501 SE2d 196) (1998); *Woodard v. Laurens County*, 265 Ga. 404, 405 (1) (456 SE2d 581) (1995). Regardless, this legislative waiver of sovereign immunity does not apply here, and therefore, Greene County's sovereign immunity is a viable defense to the ex parte TRO issue in this case.

[3] Relying on OCGA § 45-2-1 (7), Wallace contends that Moss was ineligible for immunity as a Greene County official since he is not a qualified voter on the County's voting rolls. It is questionable whether this Code section applies because county attorneys have been deemed employees as well as appointed public officials. See Ga. Const. of 1983, Art. IX, Sec. I, Par. III; OCGA § 45-2-5; *Madden v. Bellew*, 260 Ga. 530 (397 SE2d 687) (1990); *Brennan v. Chatham County Commrs.*, 209 Ga. App. 177, 178 (2) (433 SE2d 597) (1993). Assuming arguendo that Moss was subject to its requirements, he is nevertheless entitled to sovereign immunity because he acted either as an agent of the county or as an "officer de facto." OCGA § 45-2-1; *Middlebrooks v. Bibb County*, 261 Ga. App. 382, 384 (1) (582 SE2d 539) (2003).

Wallace also sued Lombard and Moss in their individual capacities. We conclude that these claims, seeking to hold Lombard and Moss personally liable, are precluded by official immunity. "Under the doctrine of official immunity, public agents are protected from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption. The immunity does not extend to the negligent performance of a ministerial duty." (Punctuation and footnotes omitted.) *Smith v. Bulloch County Bd. of Commrs.*, 261 Ga. App. 667, 668 (1) (583 SE2d 475) (2003).

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed. Procedures or instructions adequate to cause an act to become merely ministerial must be so clear, definite and certain as merely to require the execution of a relatively simple, specific duty.

(Footnote omitted.) Id. at 669 (1). "The discretionary act rule deals not with the act of negligence. The rule grants immunity to public employees who perform discretionary acts in a negligent manner." Id. at 668 (1).

The record shows that after they received the information about Wallace's behavior from County commissioners and employees, Lombard and Moss exercised discretion in determining an appropriate measure to protect the public and workplace against Wallace's alleged threats. The manner in which concerns for public and workplace safety should be addressed is not a simple, specific duty. As such, the decisions made by Lombard and Moss to seek a TRO in this case were not ministerial, but rather, were discretionary acts.[4] See, e.g., *Anderson v. Cobb*, 258 Ga. App. 159, 160-161 (2) (573 SE2d 417) (2002) (holding that a county detective's decision to seek an arrest warrant was a discretionary act); *Kelly v. Lewis*, 221 Ga. App. 506 (471 SE2d 583) (1996) (holding that decisions of school officials involving how best to insure the safety of students are discretionary acts).

---

[4] We further note that Lombard cannot be held liable for the acts of drafting and presenting the TRO, because he did not engage in these acts and could not do so since he was not an attorney. See OCGA §§ 9-11-65 (b) (2); 15-19-51 (a) (1), (6).

When Moss procured the TRO, he failed to strictly comply with the applicable statutory requirements. Nonetheless, "[t]he immunity from civil liability given to public officers for a mistake in judgment extends to errors in the determination both of law and of fact. As regards errors of law, he is equally protected when he adopts a mistaken construction of an Act of Congress or a State statute, or when he misunderstands the common law." (Citation and punctuation omitted.) *Partain v. Maddox*, 131 Ga. App. 778, 782 (1) (206 SE2d 618) (1974).

"The record in the present case is utterly devoid of any conduct by the defendant which could remotely be construed as being sufficient to lift the shield that protects public officers acting colore officii." *Partain*, supra at 785 (1). Wallace was required to show that Lombard and Moss acted with actual malice, that is express malice or malice in fact. *Merrow v. Hawkins*, 266 Ga. 390, 392 (2) (467 SE2d 336) (1996). He failed to do so based on the record evidence. Contrary to Wallace's assertion, there is no evidence of record supporting his assertion that Lombard and Moss knowingly presented false information to the judge in obtaining the TRO. The record reflects only that Lombard and Moss proceeded with the information that had been provided to them by the County Commissioners and employees. Wallace merely established that Moss failed to comply with the requirements of OCGA § 9-11-65 (b) in obtaining the TRO. However, this negligence, even if construed as gross negligence, is insufficient to deprive Moss of official immunity. See *Bontwell v. Dept. of Corrections*, 226 Ga. App. 524, 528 (4) (a) (486 SE2d 917) (1997). See also *Anderson*, supra at 160-161 (2) (following poor procedures and failing to properly investigate before requesting an arrest warrant do not show actual malice). As such, Lombard's official request and Moss' subsequent negligence in the performance of the steps necessary to execute this discretionary decision do not foreclose their entitlement to official immunity. See *Partain*, supra at 784-785 (1). Accordingly, summary judgment as to Wallace's cause of action for damages based on the ex parte TRO was proper under the official immunity doctrine. *Lau's Corp.*, supra.

2. In his second enumeration of error, Wallace argues that the trial court erred by granting summary judgment to the appellees on his claims for injunctive relief, damages, and attorney fees under the ORA, OCGA § 50-18-70 et seq. We agree, only with respect to Wallace's claim for attorney fees brought against Greene County and Lombard pursuant to OCGA § 50-18-73 (b).

As an initial matter, all of Wallace's ORA claims against Moss, the County Attorney, were properly dismissed. Neither Wallace nor his attorney ever made an open records request to Moss.

Furthermore, Wallace's injunctive relief claim is moot. It is undisputed that Lombard mailed Wallace's counsel a copy of Wallace's entire personnel file on September 29, 2003, shortly after this lawsuit was filed. However, Wallace's counsel refused receipt of the records "as being untimely pursuant to the statute." "[W]e find no merit in [Wallace's injunctive relief claim] because the record indicates that the [appellees] have agreed to provide him with the records that he has requested. Even if the [ORA] required disclosure in this case, [Wallace] can ask for nothing more than the records themselves. . . ." *Millar v. Fayette County Sheriff's Dept.*, 241 Ga. App. 659 (1) (527 SE2d 270) (1999). See also *McBride v. Wetherington*, 199 Ga. App. 7, 8 (403 SE2d 873) (1991) (plaintiff cannot proceed with ORA claims when "the disclosure sought by appellant is now available to him"). That Wallace's counsel chose to refuse receipt of the very documents that his client had been requesting certainly does not change this result. Wallace's counsel "should have accepted the [appellees'] offer to produce the requested records" rather than simply attempt to prolong the viability of his client's injunctive relief claim. *Millar*, supra.

Additionally, to the extent that Wallace's complaint can be construed as asserting claims for compensatory and punitive damages under the ORA, those claims also were properly dismissed. The ORA does not permit recovery of compensatory or punitive damages. *McBride*, supra at 8.

Finally, we turn to Wallace's claim for attorney fees asserted against Greene County and Lombard under OCGA § 50-18-73 (b).[5] In order to obtain attorney fees under the ORA, Wallace must meet a two prong test. First, he must show that "though [Lombard] produced the documents [Wallace] requested after [the] lawsuit was filed," the appellees "violated the [ORA] by not producing them before the suit was filed." *GMS Air Conditioning v. Dept. of Human Resources*, 201 Ga. App. 136, 138-139 (410 SE2d 341) (1991). Second, if a violation of the ORA did in fact occur, Wallace must show that the appellees lacked "substantial justification" for the violation. OCGA § 50-18-73 (b); *GMS Air Conditioning*, supra. We conclude that Wallace has met his burden as to the first prong of the test, and we remand this case

---

[5] We note that Lombard never argued in the trial court or in this Court that Wallace could not pursue a claim for statutory attorney fees against him in his individual capacity under the ORA. Likewise, Lombard never argued that he was not a "person[ ] . . . having custody of records open to the public" under the enforcement provision of the ORA. OCGA § 50-18-73 (a). Rather, throughout this litigation, the argument of the County and Lombard has been that they did not violate the ORA when they failed to respond within three days to the written request of Wallace's counsel.

to the trial court for a determination of whether Wallace met his burden as to the second prong.

It is undisputed that Wallace's counsel sent a letter to the County Manager, Lombard, on behalf of his client which made reference to the ORA and costs thereunder and which stated: "I request that you provide me the entire personnel record of Mr. Wallace." Appellees concede that, prior to the commencement of this lawsuit, they did not affirmatively respond to Wallace's request. However, appellees posit that their failure to respond affirmatively to the written request made by Wallace's counsel was not sufficient in itself to constitute a violation of the ORA. Rather, they contend that Wallace must come forward with evidence that he followed up on his initial request and was actually denied the right to inspect all or part of the requested records,[6] not simply that his written request was met with silence. We disagree with the appellees' narrow construction of the ORA.

> [T]he [ORA] was enacted in the public interest to protect the public — both individuals and the public generally — from "closed door" politics and the potential abuse of individuals and the misuse of power such policies entail. Therefore, the Act must be broadly construed to effect its remedial and protective purposes. The intent of the General Assembly was to encourage public access to information and to promote confidence in government through openness to the public and allow the public to evaluate efficient and proper functioning of its institutions.

(Punctuation and footnotes omitted.) *Corp. of Mercer Univ. v. Barrett & Farahany, LLP*, 271 Ga. App. 501, 503 (1) (a) (610 SE2d 138) (2005).

With these principles in mind, we turn to the provisions of the ORA most relevant to this case. The ORA "permits any citizen of this state to inspect public records of an agency, as defined in OCGA § 50-18-70 (a), except those that are prohibited or exempted from public inspection by law or court order." (Citation omitted.) *Strange v. Housing Auth. of City of Summerville*, 268 Ga. App. 403, 409 (2) (602 SE2d 185) (2004). The ORA further provides that

> [t]he individual in control of such public record or records shall have a reasonable amount of time *to determine whether or not the record or records requested are subject to access under this article* and to permit inspection and copying. In no

---

[6] Appellees have never alleged that any portion of Wallace's personnel records were exempt from disclosure.

event shall this time exceed three business days. Where responsive records exist but are not available within three business days of the request, a written description of such records, together with a timetable for their inspection and copying, shall be provided within that period. . . .

(Emphasis supplied.) OCGA § 50-18-70 (f).[7] Furthermore, OCGA § 50-18-72 (h) states that, if "[w]ithin the three business days applicable to [a] *response* to a request for access to records," the custodian determines that access to all or part of the requested records should be denied, the governmental entity "shall specify in writing the specific legal authority exempting such record or records from disclosure, by Code section, subsection, and paragraph." (Emphasis supplied.)

Construed together, these provisions require an affirmative response to an open records request within three business days. If the custodian determines that the records exist but cannot be made available for inspection and copying within the three-day period, the requesting party must be provided a description of the records and an inspection timetable within the three-day period. OCGA § 50-18-70 (f). In contrast, if the custodian has determined that access will be denied to all or part of the requested records, the requesting party must be provided the specific legal grounds for that determination within the three-day period. OCGA § 50-18-72 (h). Finally, if the custodian has determined that access to the records will be permitted, the custodian must inform the requesting party within the three-day period of its determination so that arrangements for inspection and copying can then proceed. See, e.g., *Felker v. Lukemire*, 267 Ga. 296, 299 (2) (477 SE2d 23) (1996) (district attorney "fully complied with his obligations under the Act" when he "responded to [plaintiff's] ORA request by notifying him that the records would be made available for inspection and copying").

Accordingly, we conclude that if the person or agency having custody of the records fails to affirmatively respond to an open records request within three business days by notifying the requesting party of the determination as to whether access will be granted, the ORA has been violated.[8] Under such circumstances, the person or agency has necessarily failed to "grant[ ] reasonable access to the files in [the

---

[7] If the records custodian determines that access to the public records should be granted, the requesting party can then inspect the records and make copies of them under the supervision of the custodian, pursuant to the terms set forth in OCGA § 50-18-71.

[8] It is only after the government entity responds to the open records request, that the onus shifts to the requesting party to follow up and notify the entity if any part of the response was unsatisfactory. See *Everett v. Rast*, 272 Ga. App. 636, 637 (612 SE2d 925) (2005).

person or agency's] custody." *Felker*, supra. Thus, in the present case, the ORA was violated when neither Lombard nor anyone else on behalf of the County responded in any manner to the open records request made by Wallace's counsel within the required three-day period. As such, Wallace satisfied the first prong for obtaining attorney fees under the ORA. *GMS Air Conditioning*, supra.

However, we do not reach whether Wallace has satisfied the second prong of the test, namely, whether appellees' reason for not complying with the ORA was completely without merit.[9] In the summary judgment briefing that occurred in the case below, the parties focused on whether the appellees' failure to provide a response within three days constituted a violation of the ORA. Hence, it is unclear from the record if the trial court considered whether the appellees "acted without substantial justification . . . in not complying with [the ORA]" or whether "special circumstances exist[ed]" that counseled against awarding fees. OCGA § 50-18-73 (b). Consequently, we remand this case to the trial court with direction to resolve whether the appellees' noncompliance with the ORA was substantially justified or whether special circumstances exist that counsel against awarding attorney fees.

For the foregoing reasons, we affirm the trial court's grant of summary judgment to the appellees on Wallace's TRO-related claims. We likewise affirm the grant of summary judgment to Moss on all of Wallace's ORA claims against him and to Greene County and Lombard on Wallace's ORA claims for injunctive relief and compensatory and punitive damages. We reverse the trial court's grant of summary judgment to Greene County and Lombard on Wallace's claim for attorney fees under the ORA and remand with direction.

*Judgment affirmed in part, reversed in part and case remanded with direction. Blackburn, P. J., and Miller, J., concur.*

DECIDED JULY 13, 2005 —
RECONSIDERATION DENIED JULY 28, 2005 —

*Adams & Ford, Francis N. Ford*, for appellant.
*O'Quinn & Cronin, Michael A. O'Quinn, Mills & Moss, David C. Moss*, for appellees.

---

[9] In this regard, we note that we agree with appellees' assertion that the access for inspection and copying mandated by the ORA does not require a custodian to *mail* a copy of the records to the requesting party, even if in many cases simply mailing the copies might be the best and most efficient practice.