## A06A1786. ATHENS NEWSPAPERS, LLC v. UNIFIED GOVERNMENT OF ATHENS-CLARKE COUNTY.
(643 SE2d 774)

ELLINGTON, Judge.

Athens Newspapers, LLC, filed suit against the Unified Government of Athens-Clarke County (hereinafter, "the county"), claiming the county violated the Open Records Act[1] when it refused to provide the newspaper access to police records on an unsolved 1992 rape and murder. The newspaper asked the court to enjoin the county from violating the Act and to compel the county to disclose the records. The newspaper appeals from the trial court's grant of summary judgment to the county, contending the court erred in concluding as a matter of law that the records were exempt from disclosure under the Open Records Act and in finding that the undisputed evidence showed the county did not violate the time requirements of the Act. For the following reasons, we reverse the trial court's judgment and remand this case to the court with direction to grant summary judgment in favor of the newspaper.

Under the Open Records Act,

> [a]ll public records of [government agencies], except those which by order of a court of this state or by law are prohibited or specifically exempted from being open to inspection by the general public, shall be open for a personal inspection by any citizen of this state at a reasonable time and place; and those in charge of such records shall not refuse this privilege to any citizen.

OCGA § 50-18-70 (b). The parties do not dispute that the records at issue in this case are public records within the meaning of the Open Records Act.

The record shows the following undisputed facts. In April 1992, a University of Georgia student, Jennifer Stone, was raped and murdered in her Athens apartment. No one has been arrested in the Stone case, the Athens-Clarke County Police Department has not identified a possible perpetrator, and investigators have not discovered any new evidence in several years. Even though the case remains unsolved, however, the Stone homicide had never been listed on the "unsolved crimes" section of the county's official website.

On August 4, 2005, the newspaper submitted a request under the Open Records Act asking the county to provide police department

---

[1] OCGA § 50-18-70 et seq.

records relating to the investigation of Stone's murder.[2] The newspaper sent separate requests by certified mail to the police department, the county attorney, the city's mayor, and the county employee in charge of the records, Tina Maisonet. The county received the certified letter that was addressed to Maisonet on August 6, 2005. On August 15, 2005, the county sent a letter to the newspaper, refusing to provide the records because its police department was "actively pursu[ing]" a criminal investigation in the Stone case. According to the county, because there was a "pending investigation" in the case, the records fell under an exemption to the Open Records Act, OCGA § 50-18-72 (a) (4).

Following the county's denial of its request, the newspaper filed a complaint under the Open Records Act, contending the county's response to its request was untimely and that the county failed to provide a factual basis for its refusal to turn over the records. The newspaper asked the court for injunctive relief as well as attorney fees and expenses. The parties filed cross-motions for summary judgment, and the court granted the county's motion, finding as a matter of law that the investigation into Stone's death was still "pending" under OCGA § 50-18-72 (a) (4). The court also ruled that the county's response to the newspaper's request was not a "technical time violation" under OCGA § 50-18-70 (f), which requires a response to an open records request within three business days. On appeal, the newspaper challenges both rulings.

> We review de novo a trial court's grant of summary judgment, construing the evidence in a light most favorable to the nonmoving party. To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the nonmovant's favor, warrant judgment as a matter of law.

(Citations omitted.) *Wallace v. Greene County*, 274 Ga. App. 776 (618 SE2d 642) (2005).

1. The newspaper contends the trial court erred in finding that the undisputed facts showed the Stone investigation was "still pending," so that, under OCGA § 50-18-72 (a) (4), the county did not have to turn over any of the records relating to the investigation. OCGA

---

[2] The request also asked for records related to the 2001 homicide of Tara Baker, who was also a UGA student. In this appeal, the newspaper does not challenge the county's refusal to turn over those records.

§ 50-18-72 (a) (4) is an exemption to the Open Records Act and provides that public disclosure is not required for

> [r]ecords of law enforcement, prosecution, or regulatory agencies in any pending investigation or prosecution of criminal or unlawful activity, other than initial police arrest reports and initial incident reports; provided, however, that an investigation or prosecution shall no longer be deemed to be pending when all direct litigation involving said investigation and prosecution has become final or otherwise terminated.

The newspaper argues that, given the absence of any current active investigation in this case and the undisputed lack of progress in solving the case for 14 years, there is no "pending investigation" in the case under OCGA § 50-18-72 (a) (4). Moreover, the newspaper contends that the investigation is dormant due to inactivity and, therefore, the case should be considered "otherwise terminated" under OCGA § 50-18-72 (a) (4). It also argues that, under the circumstances, allowing the county to withhold the records indefinitely by claiming there was a "pending investigation" defeats the purpose of the Open Records Act. Therefore, according to the newspaper, the records are not exempt under OCGA § 50-18-72 (a) (4), and the trial court should have ruled that the newspaper was entitled to the records.

As this Court has previously acknowledged, the Open Records Act was enacted in the public interest to

> protect the public — both individuals and the public generally — from "closed door" politics and the potential abuse of individuals and the misuse of power such policies entail. Therefore, the Act must be broadly construed to effect its remedial and protective purposes. The intent of the General Assembly was to encourage public access to information and to promote confidence in government through openness to the public and allow the public to evaluate efficient and proper functioning of its institutions.

(Citation omitted.) *Wallace v. Greene County*, 274 Ga. App. at 782 (2). "Compliance with the Act is not discretionary, but mandatory. OCGA § 50-18-70 (b)." (Citation omitted.) *Strange v. Housing Auth. of City of Summerville*, 268 Ga. App. 403, 409 (2) (602 SE2d 185) (2004). Further,

OCGA § 50-18-72 [(g)] directs a narrow construction of [the Act's] exclusions, exempting only that portion of a public record to which an exclusion is directly applicable. . . . To exclude [an] entire document because it contains exempted material would be unresponsive to the legislative intent underlying the Open Records Act.

(Citations and punctuation omitted.) *City of Brunswick v. Atlanta Journal & Constitution*, 214 Ga. App. 150, 152 (1) (447 SE2d 41) (1994).

In support of its argument that the records of the Stone investigation are not exempt under OCGA § 50-18-72 (a) (4), the newspaper relies on *Parker v. Lee*, 259 Ga. 195 (378 SE2d 677) (1989), a case in which the defendant was convicted of rape and murder. His rape conviction was reversed on appeal for reasons that permitted a retrial on the charge, but the murder conviction and death sentence were affirmed. Id. at 196. During habeas proceedings, the defendant sought access to the investigatory files in his case, but the State refused on the basis that the rape case was still pending under OCGA § 50-18-72 (a) (4). Id. at 196-197 (1). In reviewing the trial court's refusal to order the release of the files, the Supreme Court of Georgia noted that, because the defendant was imprisoned for murder and was facing a death sentence, the State had no incentive to retry him for the rape unless the murder conviction was overturned, nor had the State evidenced any intent to retry him. Id. at 198 (5). Thus, the Supreme Court concluded that "the rape charge . . . could remain pending for an indeterminate duration." (Citation, punctuation and footnote omitted.) Id. at 199 (5). Because the State failed to meet its burden of showing there would be "imminent adjudicatory proceedings of finite duration" (i.e., a retrial on the rape charge), the Supreme Court ruled that the case could no longer be considered "pending," and the records had to be disclosed. Id. at 198-199 (4)-(5).

In response, the county attempts to distinguish *Parker* on the basis that the case involved the prosecution of an identified perpetrator, whereas there has been no arrest of an alleged perpetrator in the Stone case and, therefore, there could be no criminal proceedings in the foreseeable future. Essentially, the county argues that, as long as there is no arrest or prosecution in the Stone case, its investigation will remain "pending" under OCGA § 50-18-72 (a) (4) indefinitely. The county also argues that the Stone case is "still pending" because investigators might be able to identify the perpetrator at some point in the future. According to the county, they obtained some DNA during the initial Stone investigation 14 years ago and have submitted it to a national DNA database, which allows state and national officials to compare it regularly to DNA samples of individuals who

have been arrested for other crimes. The county argues that, if the Stone perpetrator is someday arrested for another crime *and* those officers submit his DNA sample to the same national database, the Stone perpetrator might eventually be identified. The county contends that, as long as the database is available to attempt to find a match for the Stone perpetrator's DNA and there is "any reasonable prospect that a DNA match . . . will occur in the near or distant future," then the investigative file "should not be impaired by the premature disclosure" of the evidence therein. Even if we were to adopt this standard for determining when there is a "pending investigation" of a crime, however, the county has failed to demonstrate that there is any reasonable prospect that there will be a DNA match in this case in the future. In fact, as the newspaper points out, if the perpetrator is never arrested for another violent crime, he will never be identified through the DNA database.

The county also claims that the investigation is still pending because it has two crime analysts that "are available to assist in investigating the Stone case and other unsolved cases." The county did not show, however, that the analysts had actually done any work on the Stone case. Further, the county claims that a detective "extensively reviewed" the Stone case in 2005, although the county did not provide any details or results of the review.[3] Under the circumstances, we conclude that it would undermine the purpose of the Open Records Act if the county was allowed to claim there was a "pending investigation" and completely circumvent the mandates of the Act by simply having an employee available to review an unsolved crime file every few years.

Finally, the county contends that it has submitted a file on the Stone case to a national data center operated by the Federal Bureau of Investigation, but the record shows that the county did this in *1994*, over 12 years ago. There is nothing in the record that shows this file has resulted in any progress in solving the case.

Accordingly, we find that the undisputed evidence in this case shows that there has been no progress in solving the Stone murder for several years, there is no ongoing, active investigation of the case by the county, there are no suspects or evidence that will likely lead to identifying a suspect, and there is only a slight possibility that the county's submission of the DNA to a database will ever result in progress in solving the case. Because statutory exemptions to the Open Records Act must be narrowly construed, we conclude that the trial court erred in finding as a matter of law that there was a pending

---

[3] Notably, the record also shows that the county initiated this review after the newspaper first attempted to obtain the Stone records in 2003.

investigation in the Stone murder case, thereby allowing the county to withhold all of the investigation records indefinitely under OCGA § 50-18-72 (a) (4). *Parker v. Lee*, 259 Ga. at 198-199 (4)-(5). Further, we conclude that allowing the county to withhold all of the records of the murder investigation indefinitely under the circumstances of this case would violate the clear legislative purpose behind the Open Records Act. Id. at 198 (4). Therefore, we reverse the trial court's grant of summary judgment to the county, and direct the court to grant summary judgment in favor of the newspaper.

2. In addition to the arguments asserted on appeal in support of the trial court's grant of summary judgment, the county also suggests that the Stone records are exempt from the Open Records Act under OCGA § 50-18-72 (a) (3)[4] because disclosure of the records would compromise its investigation by revealing facts known only to investigators and the perpetrator. The county did not assert this reason in its August 15, 2005 letter, however, as a basis for denying access to the records. Under OCGA § 50-18-72 (h),[5] the county may not rely on an exemption it did not assert at the time it denied access to the records. *Hoffman v. Oxendine*, 268 Ga. App. 316, 319 (2) (601 SE2d 813) (2004). Therefore, the county's argument on appeal presents no basis for upholding the trial court's grant of summary judgment.[6]

---

[4] Except as otherwise provided by law, records compiled for law enforcement or prosecution purposes [are exempt from disclosure] to the extent that production of such records would disclose the identity of a confidential source, disclose confidential investigative or prosecution material which would endanger the life or physical safety of any person or persons, or disclose the existence of a confidential surveillance or investigation.
OCGA § 50-18-72 (a) (3).

[5] Within the three business days applicable to response to a request for access to records under this article, the public officer or agency having control of such record or records, if access to such record or records is denied in whole or in part, shall specify in writing the specific legal authority exempting such record or records from disclosure, by Code section, subsection, and paragraph. No addition to or amendment of such designation shall be permitted thereafter or in any proceeding to enforce the terms of this article; provided, however, that such designation may be amended or supplemented one time within five days of discovery of an error in such designation or within five days of the institution of an action to enforce this article, whichever is sooner; provided, further, that the right to amend or supplement based upon discovery of an error may be exercised on only one occasion. In the event that such designation includes provisions not relevant to the subject matter of the request, costs and reasonable attorney's fees may be awarded pursuant to Code Section 50-18-73.
OCGA § 50-18-72 (h).

[6] Even if this argument had not been waived, the fact that the records *might* include some confidential information that could impede the investigation if disclosed would not provide a basis for the county's refusal to release *all* of the records. *City of Brunswick v. Atlanta Journal & Constitution*, 214 Ga. App. at 152 (1). In such a circumstance, the trial court would conduct an ex parte hearing or in camera review of the records to determine what information must be

3. The newspaper claims the trial court erred in finding the county did not violate the statute that required the county to respond to all open records requests within three business days. For the following reasons, we agree.

Under OCGA § 50-18-70 (f), after an Open Records Request is submitted to a public agency, "[t]he individual in control of . . . public record[s] . . . shall have a reasonable amount of time to determine whether or not the record or records requested are subject to access under this article and to permit inspection and copying. In no event shall this time exceed three business days." Further,

> [w]ithin the three business days applicable to response to a request for access to records under this article, the public officer or agency having control of such record or records, if access to such record or records is denied in whole or in part, shall specify in writing the specific legal authority exempting such record or records from disclosure, by Code section, subsection, and paragraph.

OCGA § 50-18-72 (h).

The record shows that the newspaper sent the open records request by certified mail to "Tina Maisonet, Athens-Clarke County Police Department" at the county office building, in addition to sending the request to the police department, the county attorney, and the city's mayor. Someone at the county offices signed the receipt for Maisonet's letter on August 6, 2005, but no one gave the request to Maisonet until August 11. The county has offered no explanation for the delay. The county did not respond to the newspaper's request until August 15, six business days after it received the request.

In finding that the county had not violated the three-day response requirement, the court found that "the starting time for compliance began when Ms. Maisonet herself received the request." The newspaper argues, however, that the response time should begin when the agency receives the request. Otherwise, the agency would be able to extend the response time indefinitely, or even avoid sending the required response, by failing to forward the request to the appropriate employee in a timely manner after it has received the request.

There is no Georgia authority construing OCGA § 50-18-70 (f) to clarify whether the three business day response clock starts running upon delivery of the records request to the government agency or

---

redacted, and the remaining material would then be subject to disclosure. See *Atlanta Journal & Constitution v. City of Brunswick*, 265 Ga. 413, 415 (2) (457 SE2d 176) (1995).

upon delivery to the individual in charge of the records. The statute's provisions are mandatory, however, and we agree with the newspaper's argument that agencies should not be allowed to circumvent the statute's time restrictions through inaction or malfeasance. We find that construing OCGA § 50-18-70 (f) to mean that the agency must respond to an Open Records Act request within three business days after the agency receives the request is necessary to prevent governmental abuse and to uphold the purposes of the Act.

Accordingly, because the undisputed evidence showed that the county failed to respond to the newspaper's Open Records Act request within three business days of receiving the request, the trial court erred in finding as a matter of law that the county did not violate OCGA § 50-18-70 (f).

*Judgment reversed and case remanded with direction. Johnson, P. J., and Miller, J., concur.*

DECIDED MARCH 7, 2007 —
RECONSIDERATION DENIED MARCH 23, 2007 — 

*Hull, Towill, Norman, Barrett & Salley, David E. Hudson, Davis Dunaway*, for appellant.
*William C. Berryman, Jr.*, for appellee.

