**SECOND DIVISION**
**RICKMAN, C. J.,**
**MILLER, P. J., and PIPKIN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 14, 2023**

# In the Court of Appeals of Georgia

A22A1580. BUTT v. KEMP.

PIPKIN, Judge.

Appellant Sohail N. Butt sued Appellee Brian Kemp in his official capacity as Governor of the State of Georgia alleging violations of the Open Records Act, see OCGA § 50-18-70 et seq. The trial court granted the Governor's motion to dismiss pursuant to OCGA § 9-11-12 (b) (6), and this appeal followed. As explained below, we now affirm.

"This Court reviews de novo a trial court's ruling on a motion to dismiss for failure to state a claim, construing the pleadings in the light most favorable to the plaintiff and with any doubts resolved in the plaintiff's favor, and viewing all well-pled allegations in the complaint as true." (Citation and punctuation omitted.)

*Blau v. Ga. Dept. of Corrrections*, 364 Ga. App. 1, 2 (873 SE2d 464) (2022). With this standard in mind we turn to the pleadings and attachments.[1]

In his pro se complaint, Butt alleges that he submitted a petition under OCGA §§ 43-1C-3[2] and 50-13-9[3] to the office of then-Governor Nathan Deal in July 2016.[4]

_____

[1] See *Minnifield v. Wells Fargo Bank, N.A.*, 331 Ga. App. 512, 514 (2) (771 SE2d 188) (2015) ("When considering a motion to dismiss for failure to state a claim, a trial court may consider exhibits attached to and incorporated into the complaint and answer."). As discussed below, however, it is unclear whether the attachments to Butt's complaint may be properly considered.

[2] OCGA § 43-1C-3 is part of the Georgia Professional Regulation Reform Act. See OCGA § 43-1C-1 et seq. This provision declares that the Governor "shall have the authority and duty to actively supervise the professional licensing boards of this state to ensure that their actions are consistent with clearly articulated state policy[.]" OCGA § 43-1C-3 (a). Under the express language of this statute, the Governor may, among other things, "[r]eview and, in writing, approve or veto" potential agency rules; "[r]eview and, in writing, approve, remand, modify, or reverse any action by a professional licensing board"; and "[p]romulgate any regulations or executive orders [as] necessary" to effectuate the provisions of the Act. OCGA §§ 43-1C-3 (a) (1) - (4).

[3] OCGA § 50-13-9 provides as follows: "An interested person may petition an agency requesting the promulgation, amendment, or repeal of a rule. Each agency shall prescribe by rule the form for petitions and the procedure for their submission, consideration, and disposition. Within 30 days after submission of a petition, the agency either shall deny the petition in writing, stating its reasons for the denial, or shall initiate rule-making proceedings in accordance with Code Section 50-13-4."

[4] It appears that Butt's petition pertained to the "Georgia Composite Board for Professional Counselors, Social Workers, Marriage, and Family Therapists."

The status of that July 2016 petition is unclear; however, years later, in a letter dated April 10, 2019, Butt, through counsel, submitted an Open Records Request to the Office of Governor Brian Kemp requesting all records relevant to Butt's 2016 petition. The Office of the Governor, through counsel, responded by letter dated April 19, 2019, that it had identified no documents responsive to Butt's request.

Undeterred, Butt, again through counsel, sent a second correspondence to the Office of Governor Kemp. This second letter, dated April 25, 2019, states that Butt's counsel was in possession of "documents and communications between the Office of the Governor and [Butt]" that would have been responsive to the original records request; the letter again asked the Office of the Governor to provide any records responsive to the original request. In a letter dated May 9, 2019, the Office of the Governor, through counsel, reaffirmed that it had identified no documents responsive to Butt's request and explained that records from previous gubernatorial administrations would have been archived.

In a third letter to the Office of the Governor, dated May 24, 2019, Butt demanded, under threat of legal action, that the Office of the Governor either produce the requested documents or direct Butt to the relevant individual or entity in possession of the documents. In response, the Governor's office reiterated that it had

3

identified no relevant records and directed Butt to contact the Georgia Archives. Consequently, Butt, through counsel, reached out to the Georgia Archives, reasserting his original request for records related to his July 2016 petition; however, the Georgia Archives was unable to locate documents responsive to Butt's request.

After receiving the response from the Georgia Archives, Butt's counsel sent two final letters, one to the Georgia Archives and one to the Office of the Governor. In the letter to the Archives, Butt's counsel requested a copy of the "policy and guidelines" pertaining to the "retention periods for records received from the Office of Governor upon change of administration," as well as the "legal and factual basis" for the retention policy for certain records. In response, the Georgia Archives responded that it did not maintain a retention policy separate from the Open Records Act and that it follows a common agency schedule for retention periods. In a similar letter to the Office of the Governor dated June 14, 2019, Butt's counsel requested "a copy of the Office of the Governor's open records retention period policy and guidelines pursuant to the Georgia Opens Records Act" relevant to his July 2016 petition. The letter also requested that the Office provide a "legal and factual basis for the retention period." Central to Butt's claim, it appears undisputed that the Governor's office did not respond to the June 14, 2019 letter.

After summarizing this timeline, the complaint vaguely alleges that the Governor's office hampered the production of documents by denying the records existed, failed to identify the custodian of records, and failed to produce its "open records retention period policy and guidelines." Ultimately, the complaint asserts that the Governor's "failure to provide responsive documents to [Butt's] open records request for [his] open records retention policy and guidelines, and/or [his] failure to affirmatively respond to [Butt's] request violated the Open Records Act."

Governor Kemp answered and moved to dismiss, arguing that Butt had failed to state a claim for which relief could be granted, see OCGA § 9-11-12 (b) (6). In the motion, the Governor argued that he had acted properly with respect to Butt's requests for records; he asserted that he was not required to produce records that his office does not have and, further, that the Open Records Act does not require him to respond to requests where no responsive documents have been identified. Governor Kemp also pointed out that "[t]he complaint does not contain any factual allegations that Governor Kemp's office *does* have the requested records and does not allege any facts that would prove that Governor Kemp's office has the records that they refused to produce." (Emphasis in the original.) In response to the motion to dismiss, Butt argued that his complaint and attached exhibits showed that he could and would

prove that "(1) the documents sought by [Butt] existed; (2) Governor Kemp did not respond to [Butt's] open records request for Governor Kemp's Open Records Retention policy and guidelines which Governor Kemp admits in judicio is a request for Open Records; [and, thus] (3) that Governor Kemp violated the Open Records Act[.]"

In its order granting the motion to dismiss, the trial court concluded that Butt's complaint could best be understood as alleging that the Governor's office violated the Open Records Act "when it did not respond to the June 14, 2019 request within three business days" and when the Governor's office failed "to provide records in response to [the] request for a retention policy."[5] The trial court concluded that nothing in Butt's pleadings suggested that the Governor actually had any of the requested documents, which, the trial court concluded, was a precursor to recovery under the

---

[5] The trial court's legal analysis neither mentions nor considers Butt's original request for records from April 2019, and Butt does not challenge the trial court's characterization of his claim; likewise, Butt does not appear to pursue any argument concerning those original requests on appeal.

Open Records Act.[6] Butt now appeals.[7]

In two interrelated and often times murky enumerations, Butt argues that the trial court utilized the incorrect standard in evaluating the motion to dismiss and, further, that he has articulated a cognizable violation of the Open Records Act. We disagree.

It is now well established that

[a] motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.

---

[6] As noted above, the trial court appears to have considered the various correspondence attached to Butt's complaint in accordance with OCGA § 9-11-10 (c), which provides as follows: "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." It is not at all clear, however, that the letters – some of which are from third parties – constitute "written instruments" as that term is used in that provision. See *Williams v. DeKalb County*, 364 Ga. App. 710, 721 (2) (a) (ii) (A) (875 SE2d 865) (2022).

[7] Butt also asserted a claim under the Georgia Records Act, OCGA § 50-18-90 et seq., and the trial court dismissed this claim, too, but on different grounds. We see no indication in Butt's brief that he is challenging this ruling.

(Citation and punctuation omitted.) *Cardinale v. Keane*, 362 Ga. App. 644, 650 (869 SE2d 613) (2022).

As an initial matter, Butt claims that the trial court erroneously used a summary-judgment-like standard when considering the Governor's motion to dismiss rather than assessing the parties' pleadings. While the trial court's order briefly and inartfully mentions "construing the evidence in a light most favorable to [Butt]" and notes that there was "no evidence" that the Governor possesses the documents sought by Butt, it is clear that the trial court resolved the motion to dismiss based on the parties' pleadings. Indeed, in addressing the Open Records Act claim, the trial court concluded that Butt's "*complaint* does not contain any *factual allegations*" that the Governor possesses the relevant records and that Butt could not "prove a set of facts in support of his claim which would entitle him to relief." (Emphasis supplied.) Thus, while the language in the order is imprecise, we are satisfied that the trial court applied the correct standard here.

Turning to the substance of Butt's appeal, he claims that the trial court

erroneously dismissed his Open Records Act claim against Governor Kemp.[8] Specifically, Butt asserts that, under the Open Records Act, the Office of the Governor was required to respond in writing to his June 14 request for the record retention policy, even if such a record did not exist; thus, Butt's argument goes, the Governor's failure to affirmatively respond to a records request is itself a violation of the Open Records Act. Butt's argument fails.

Citing to the Open Records Act generally, Butt argues, like he did below, that "the only natural and meaningful interpretation of the Open Records Act requires a finding that an affirmative response is required even if an agency has none of the records requested." According to Butt, "the Open Records Act does not limit the requirement of an affirmative response to the existence[] or a determination of existence of records requested." However, as the Governor rightly argues, Butt fails to identify any language in the Open Records Act that imposes such a responsibility; indeed, Butt fails to engage in any statutory interpretation or textual analysis to support his expansive reading of the statute. Instead, Butt relies on a string of cases

---

[8] There has been no argument that the Office of the Governor is not an "agency" as that word is used in the Open Records Act or that the documents sought by Butt are not "public records" as that term is defined in the Act. See OCGA §§ 50-18-70 (b) (1) and (2).

that, as he acknowledges, merely hold that "an affirmative response to an open records request is required *where responsive records exist.*"[9] (Emphasis supplied.) Not only are these cases plainly inapposite to the question Butt seeks to have resolved,[10] but these decisions all pre-date the 2012 "comprehensive revision" of the Open Records Act, see *Institute for Justice v. Reilly*, 351 Ga. App. 317, 320 (1) (830 SE2d 793) (2019), and Butt makes no effort to address whether they remain relevant

---

[9] See, e.g., *Benefit Support, Inc. v. Hall County*, 281 Ga. App. 825, 834 (7) (637 SE2d 763) (2006) ("The county failed to respond to the request within three days and indeed did not make any of the requested documents available until October 1, and even then made available only one of the five categories."); *Wallace v. Greene County,* 274 Ga. App. 776, 783 (2) (618 SE2d 642) (2005) ("[I]f the person or agency *having custody of the records* fails to affirmatively respond to an open records request within three business days by notifying the requesting party of the determination as to whether access will be granted, the ORA has been violated.").

[10] In fact, at least one of the cases cited by Butt actually suggests that no response is required under these circumstances. See *Schulten, Ward & Turner, LLP v. Fulton-DeKalb Hosp. Auth.*, 272 Ga. 725, 727 (535 SE2d 243) (2000) ("An agency does not 'deny' access to records which do not exist. A statutory requirement for a written statement of the reasons for denial of a request for access to public records does not require the public officer or agency to specify in writing that such records were never created.").

under the current statute.[11] While Butt is pro se and is asserting what he claims is a novel issue of law, "[i]t is not this court's role to speculate about the legal basis for an appellant's argument[.]" *Evans v. State*, 360 Ga. App. 596, 608 (11) (a) (859 SE2d 593) (2021).[12] Accordingly, Butt's argument is without merit, and the judgment of the trial court is affirmed.

*Judgment affirmed. Rickman, C. J., and Miller, P. J., concur.*

---

[11] Butt argues that his interpretation of the Open Records Act is bolstered by the fact that the Governor's office responded to his first three letters despite having no records responsive to those requests. As explained above, however, Butt has failed to demonstrate that the Open Records Act itself demands such as a response from the Governor's Office, and such a conclusion cannot be reached simply because the Governor's Office may have done more than required by law in this case.

[12] Butt's brief includes a number of rhetorical questions, such as asking how the Open Records Act can be effective if agencies are not required to affirmatively respond to all records requests; these concerns sound in policy, which is squarely within the province of the General Assembly. See *Deal v. Coleman*, 294 Ga. 170, 174 n.11 (1) (a) (751 SE2d 337) (2013).