A06A2148. BENEFIT SUPPORT, INC. v. HALL COUNTY et al.
A06A2149. HALL COUNTY v. BENEFIT SUPPORT, INC.
A06A2150. CURRAHEE HEALTH BENEFITS SOLUTIONS, INC. et al. v. BENEFIT SUPPORT, INC.

(637 SE2d 763)

BLACKBURN, Presiding Judge.

In this civil action brought by Benefit Support, Inc. against Hall County and its insurance consultant Currahee Health Benefits Solutions, Inc. (and a Currahee employee) for claims arising out of Benefit not being awarded the contract for Hall County's employee health insurance, Benefit in Case No. A06A2148 appeals the grant of summary judgment to these defendants on several claims in the complaint. In Case No. A06A2149, Hall County cross-appeals the trial court's denial of summary judgment on Benefit's Open Records Act claim of the complaint, in which claim Benefit alleged that the county had not responded timely to an Open Records Act request. In Case No. A06A2150, Currahee and its employee cross-appeal the trial court's denial of summary judgment on Benefit's negligent representation claim against Currahee and the employee, in which Benefit alleged that Currahee and the employee had misrepresented the employee's licensing status to Benefit. For the reasons set forth below, we affirm in the first two cases and reverse in the third.

Summary judgment is only proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn

from it, in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*[1]

So viewed, the evidence shows that in May 2002, Hall County entered into a contract with Currahee, whereby Currahee would provide consulting and counseling services to Hall County to assist the county in analyzing bids and awarding contracts for its employee insurance needs. Currahee represented that its counselors would be properly licensed and totally objective. The county in June 2002 publicized a Request for Proposals (RFP), in which the county solicited businesses to provide sealed bids on the county's employee insurance needs, including health insurance needs. In this RFP, the county identified Robert Holt of Currahee as its consultant and as the contact person for technical questions and further reserved the right to reject any or all bids.

Benefit submitted a bid on the health insurance portion, proposing that for a certain fee Benefit would act as the third-party administrator of the self-insurance portion of the plan and that Companion Life (an insurance company) would provide the stop-loss insurance for excess insurance claims. Other companies, including Group Resources, submitted bids also.[2] Currahee's employee Holt analyzed all of the bids and narrowed the field to the three most promising bids: Benefit's, Group Resources', and a bid from Blue Cross for a fully funded option. Holt and some county employees interviewed the three finalists in July, at which time Benefit's representative alleged that Group Resources might not be licensed to act as a third-party administrator of a self-insured program. See OCGA § 33-23-101 (a) (license required for insurance administrators). When asked, Group Resources' representative responded that it had the necessary license.

After further analysis, Holt recommended to the county that even though Benefit's proposed fee was lower, the contract should be awarded to Group Resources based on his conclusions regarding the comparative capabilities and services of the two companies. Discussing Holt's recommendation, the county committee over the bids conducted an open work session on August 5, at which time Benefit's representative reasserted that Group Resources lacked an administrator's license and further alleged for the first time that Holt himself lacked the proper license to act as the county's consultant and

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[2] Unbeknownst to Benefit, Holt solicited Group Resources to change its sealed bid and also substituted the Companion Life quote into the Group Resources' bid when presenting the final recommendations to the county.

counselor in the insurance bidding process. See OCGA §§ 33-23-1.1; 33-23-4. The county committee suspended its work session to investigate the allegations.

Over the next few days, the county determined that Holt was required to have a counselor's license but did not. Concluding that this tainted the entire bidding process, the county commissioners on August 8 voted to throw out all the bids and recommendations and to redo the entire bidding process. Investigating this result, Benefit sent several Open Records requests to the county over the next year, to which the county properly responded with the exception of an August 27, 2003 request. Dissatisfied with its findings, Benefit sued the county, Currahee, Holt, and Group Resources, alleging three claims against the county (violation of bidding regulations, violation of constitutional rights, and violation of Open Records Act), four claims against Currahee and Holt (tortious interference with business relations, OCGA § 51-1-6 action, negligent misrepresentation, and civil conspiracy), and three claims against Group Resources (tortious interference with business relations, OCGA § 51-1-6 action, and civil conspiracy). Benefit further sought punitive damages against Currahee, Holt, and Group Resources.

The county moved for summary judgment on all claims against it, which motion the court granted except on the Open Records claim. Benefit appeals those portions of the order granting summary judgment (Case No. A06A2148), and the county cross-appeals the denial of summary judgment on the Open Records claim (Case No. A06A2149).

Currahee and Holt also moved for summary judgment on all claims against them, which motion the court granted except on the negligent misrepresentation claim. Benefit appeals those portions of the order granting summary judgment (Case No. A06A2148), and Currahee and Holt cross-appeal the denial of summary judgment on the negligent misrepresentation claim (Case No. A06A2150). Group Resources did not move for summary judgment and is not involved in any of these appeals as a party.

## Case No. A06A2148

1. In its first claim, Benefit alleges that as the lowest bidder of the three finalists, Benefit was entitled under county guidelines to be awarded the contract, and that the county is liable for Benefit's bid preparation costs as a consequence of wrongfully rejecting Benefit's bid. See *City of Atlanta v. J. A. Jones Constr. Co.*[3] ("[w]hen . . . a governmental entity has frustrated the bid process and awarded the

---

[3] *City of Atlanta v. J. A. Jones Constr. Co.*, 260 Ga. 658, 659 (1) (398 SE2d 369) (1990).

contract to an unqualified bidder, the injured low bidder may bring an action for appropriate relief"). But here no contract was awarded to an unqualified bidder; indeed, no contract was awarded at all, as all bids were universally rejected on the ground that the entire bidding process was tainted by the nonlicensure status of Holt, who had overseen, conducted, and intimately participated in the process as a counselor to the county and as a responder to inquiries from bidders. Having reserved in the RFP the right to reject any or all bids, the county acted in accordance with its rights in rejecting all the bids on these grounds.

Ironically, it was Benefit who alerted the county to Holt's lack of a proper license and who implied that the bidding process was accordingly defective. Benefit has vociferously argued below and on appeal that as a direct result of Holt's lack of a proper license, the county rejected Benefit's bid as well as all of the other bids. During the hearing in the trial court on the summary judgment motions, Benefit's counsel stated without equivocation: "Because Mr. Holt came here — came to Hall County in this case and provided consulting services without a license, my client's bid was thrown out. There was a direct cause-and-effect relationship." In its appellant's brief in Case No. A06A2148, Benefit argues that "the County's express reason for rejecting all bids . . . was Holt's failure to hold a license," and that "Holt's conduct is the reason Appellant's bid was thrown out." In its appellee's brief in Case No. A06A2150, Benefit repeats in the title to a section that "Holt's Non-Licensure Causes [Benefit's] Bid to be Rejected." In the brief's text, Benefit adamantly asserts that "[i]t is thus undisputed in this case that [Benefit's] bid on the RFP at issue was rejected by the Board because of Holt's non-licensure." We agree that the undisputed evidence supports these arguments.

This undisputed causal link between Holt's lack of a license and the rejection of Benefit's bid, which link Benefit has taken pains to emphasize to this Court and to the court below, fatally wounds Benefit's claim that the county erred in rejecting its bid. Indeed, the county's rejection of the entire bidding process as tainted was an eminently reasonable and rational if not ineluctable response to Benefit's pointing out the lack of this license. Since the very person who was conducting the insurance bidding process, who was analyzing the insurance bids and making recommendations to the county, who was responding to bidder's inquiries, and who was assisting and counseling in the interviews of the final bidders, was unlicensed and therefore unauthorized to do such, the county had ample if not overwhelming reason to conclude that the entire process was tainted and unreliable and should therefore be rejected. Benefit's disappointment that it shot itself in the foot by pointing out this lack of a license and thereby had its bid also rejected is hardly grounds for a viable

complaint against the county, which simply reacted to this news in a prudent and cautious manner by exercising its right set forth in the RFP to reject all bids.

The trial court did not err in granting the county summary judgment on Benefit's "frustrated bidder" claim in its complaint alleging that the county violated its bidding rules and regulations.

2. Benefit argues that the trial court erred in granting summary judgment to the county on Benefit's claims that the county violated Benefit's substantive due process and equal protection rights protected by the Georgia Constitution when the county arbitrarily rejected its bid. This argument fails.

Assuming that Benefit had a property right that the county infringed when rejecting its bid, we note that the substantive due process protection of the Georgia Constitution means that

> [w]here [as here] it is not a fundamental right that is infringed and the person complaining is not a member of a suspect class, the government action is examined under the rational basis test, the least rigorous level of constitutional scrutiny. . . . [The government action] need only be reasonable in relation to the goal they seek to achieve. Only if the means adopted, or the resultant classifications are irrelevant to the [government's] reasonable objective, or are altogether arbitrary, does the [government action] offend due process.

(Citations omitted.) *Old South Duck Tours v. Mayor &c. of Savannah.*[4]

As set forth above, the county's decision to throw out the entire bidding process was rational in light of the taint caused by Holt's nonlicensure status and therefore did not violate any substantive due process rights.

The equal protection analysis reaches a similar result. Where, as here, neither a suspect classification nor a fundamental right is at issue, the equal protection guarantee of the Georgia Constitution means that we apply a rational basis standard of review, which requires that any governmental classifications be reasonable and not arbitrary and rest upon some ground of difference having a fair and rational relationship to the government's objective, so that all similarly situated persons are treated alike. *Sears v. Dickerson.*[5] Here,

---

[4] *Old South Duck Tours v. Mayor &c. of Savannah*, 272 Ga. 869, 872 (2) (535 SE2d 751) (2000).

[5] *Sears v. Dickerson*, 278 Ga. 900, 901-902 (2) (607 SE2d 562) (2005).

because of the taint to the process, all bids were rejected, and thus no classification was created at all. There could hardly be a clearer example of similarly situated persons being treated alike. The county did not exercise arbitrary power but acted rationally and reasonably in rejecting all bids across the board. Cf. *Dorsey v. City of Atlanta.*[6]

3. Benefit challenges the grant of summary judgment to Currahee and Holt on its claim that they tortiously interfered with Benefit's business relations with the county by failing to ensure that Holt had the proper license to act as the county's counselor. To sustain this cause of action, Benefit had to show that acting improperly and without privilege, Currahee and Holt maliciously and with intent to injure Benefit induced the county to not enter into a business relationship with Benefit, which caused Benefit financial injury. See *Cox v. City of Atlanta.*[7]

Benefit cannot show the first essential element that Currahee and Holt acted improperly and without privilege. As stated in *Cox*,

> [t]o sustain a claim for intentional interference with business relations, the tortfeasor must be an intermeddler acting improperly and without privilege. *To be liable for tortious interference with business relations, one must be a stranger to the business relationship giving rise to and underpinning the contract.* But, where a defendant had a legitimate interest in either the contract or a party to the contract, he is not a stranger to the contract itself or to the business relationship giving rise thereto and underpinning the contract. Nor does the fact that a defendant did not sign the contract preclude a finding that he was no stranger to the contract. In sum, all parties to an interwoven contractual arrangement are not liable for tortious interference with any of the contracts or business relationships. Moreover, the applicability of the "stranger doctrine" is the same for tortious interference with a business relationship as for tortious interference with a contractual relationship. For this reason, proof that the defendant was no stranger to the business relations at issue is fatal to the plaintiff's claim of tortious interference with business relations.

(Punctuation and footnotes omitted; emphasis supplied.) Id. at 332-333 (1).

---

[6] *Dorsey v. City of Atlanta*, 216 Ga. 778, 781 (119 SE2d 553) (1961).
[7] *Cox v. City of Atlanta*, 266 Ga. App. 329, 332 (1) (596 SE2d 785) (2004).

Holt and Currahee were not strangers to the business relationship between the county and Benefit, but indeed were intimately involved in that relationship as the hired consultants to the county to advise it on that very relationship and to interact with Benefit in the process. The consulting contract was certainly a part of the interwoven set of contracts governing the bidding process, which was the basis for the business relationship between Benefit and the county. Where the defendant is the entity the third party hires to administer, operate, or promote the event that forms the basis for the business relationship between the plaintiff and the third party, the defendant is no stranger to that relationship and cannot be held liable for interfering therewith. See *Galardi v. Steele-Inman*.[8] See also *Pruitt Corp. v. Strahley*[9] (independent care provider hired by nursing home is not stranger to relationship between nursing home and patient); *Atlanta Multispecialty Surgical Assoc. v. DeKalb Med. Center*[10] (director of surgical assistants is not stranger to business relationship between provider of surgical assistants and hospital).

The trial court did not err in granting summary judgment on Benefit's tortious interference claim against Currahee and Holt.

4. Averring that the law requiring Holt to be licensed as an insurance counselor was intended to serve Benefit's interests, Benefit asserted a claim against Currahee and Holt under OCGA § 51-1-6. Specifically, Benefit claimed that because the law mandated that Holt be properly licensed, Holt's failure to have such a license, which resulted in Benefit's bid being rejected, allowed Benefit to sue Holt and Currahee for damages incurred by such rejection.

OCGA § 51-1-6 provides that "[w]hen the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby." In determining whether the violation of a particular statute creates a cause of action in a particular person per OCGA § 51-1-6, we "examine the purposes of the legislation and decide whether the injured person falls within the class of persons the statute was intended to protect and whether the harm complained of was the harm it was intended to prevent." *Odem v. Pace Academy*.[11]

OCGA §§ 33-23-1.1 and 33-23-4, the statutes requiring insurance counselors to be licensed, do not specify the persons who are to

---

[8] *Galardi v. Steele-Inman*, 266 Ga. App. 515, 521 (3) (597 SE2d 571) (2004).

[9] *Pruitt Corp. v. Strahley*, 270 Ga. 430 (510 SE2d 821) (1999).

[10] *Atlanta Multispecialty Surgical Assoc. v. DeKalb Med. Center*, 273 Ga. App. 355, 356-357 (2) (615 SE2d 166) (2005).

[11] *Odem v. Pace Academy*, 235 Ga. App. 648, 657 (3) (510 SE2d 326) (1998).

benefit from this requirement. However, it is obvious that the requirement, which mandates that the individual so licensed meet certain qualifications (see OCGA § 33-23-5 (a) (6)), is designed to protect the insurance counselor's clients who receive his or her advice. It ensures that those businesses and individuals who hire and receive services from insurance counselors are not subjected to receiving services from unqualified individuals. This requirement cannot be construed as designed to protect or benefit providers of insurance, who may indeed at times be seen as adversarial to counselors or consultants who are advising potential clients about them. The generic statement that OCGA § 33-23-5 (a) is "[f]or the protection of the people of this state" does not expand the intent of the statute requiring licensure for counselors to benefit businesses that provide insurance. This is similar to the requirement that those persons performing anesthesia services be properly licensed. As held in *Central Anesthesia Assoc. v. Worthy*,[12] such is designed to protect the recipients of those services, i.e., the patients. It is not designed to benefit the anesthesiology industry at large or to protect providers of anesthesiology equipment or medicines. See also *Brown v. Belinfante*[13] (dentistry regulatory statute designed to protect the health and welfare of patients submitting themselves to the care of dentists); *Potts v. Fidelity Fruit &c. Co.*[14] (food protection act designed to protect consumers of produce, not workers who deal with the produce).

The trial court did not err in granting Currahee and Holt summary judgment on Benefit's OCGA § 51-1-6 claim.

5. Benefit asserted a civil conspiracy claim against Currahee, Holt, and Group Resources arising out of their conspiring to tortiously interfere with Benefit's business relations with the county. Benefit argues that the trial court erred in granting Currahee and Holt summary judgment on this claim. However, as shown above, the tortious interference claim fails as to Currahee and Holt. "Absent the underlying tort, there can be no liability for civil conspiracy." *O'Neal v. Home Town Bank of Villa Rica.*[15] See *Premier/Ga. Mgmt. Co. v. Realty Mgmt. Corp.*[16] Moreover, the alleged interference by Group Resources was its purported participation in the improper changing of its sealed bid after the bids were submitted and in the misleading of the county as to its own licensing status as an administrator. But

---

[12] *Central Anesthesia Assoc. v. Worthy*, 173 Ga. App. 150, 153 (325 SE2d 819) (1984), aff'd, 254 Ga. 728 (333 SE2d 829) (1985).

[13] *Brown v. Belinfante*, 252 Ga. App. 856, 861 (1) (557 SE2d 399) (2001).

[14] *Potts v. Fidelity Fruit &c. Co.*, 165 Ga. App. 546, 547 (301 SE2d 903) (1983).

[15] *O'Neal v. Home Town Bank of Villa Rica*, 237 Ga. App. 325, 330 (4) (514 SE2d 669) (1999).

[16] *Premier/Ga. Mgmt. Co. v. Realty Mgmt. Corp.*, 272 Ga. App. 780, 788 (3) (c) (613 SE2d 112) (2005).

since the bids were all rejected due to Holt's nonlicensure, these alleged actions were of no consequence and resulted in no damages to Benefit. This underlying tort accordingly also fails and cannot serve as a basis for the civil conspiracy claim against Holt and Currahee. The trial court did not err in granting summary judgment on this claim.

6. Benefit argues that the trial court erred in entering summary judgment on its claim for punitive damages against Currahee and Holt. We disagree. "Since [Benefit] cannot recover on [its] underlying tort claims as a matter of law, there can be no punitive damages thereon." *Green v. Home Depot U.S.A.*[17]

## Case No. A06A2149

7. The county has cross-appealed the trial court's denial of its motion for summary judgment on Benefit's Open Records claim. We hold that because evidence showed that the county did not affirmatively respond to Benefit's request within the required three days, and indeed did not make the requested documents available until after this action was filed, the trial court did not err in refusing to dismiss the claim.

OCGA § 50-18-70 (b) provides that all public records of an agency shall be open for a personal inspection by any citizen of Georgia at a reasonable time and place. Once a request for review of records is communicated to the agency, the records custodian shall have no more than three business days to determine whether or not the records requested are subject to access under the statute. OCGA § 50-18-70 (f). The records custodian must also determine within this three-day response period whether access will be denied on the basis of an exemption. OCGA § 50-18-72 (h).

Based on these provisions, we have previously construed this Act to "require an affirmative response to an open records request within three business days." *Wallace v. Greene County.*[18] "[I]f the person or agency having custody of the records fails to affirmatively respond to an open records request within three business days by notifying the requesting party of the determination as to whether access will be granted, the [Open Records Act] has been violated." Id. *Wallace* explained that "[u]nder such circumstances, the person or agency has necessarily failed to grant reasonable access to the files in the person or agency's custody." (Punctuation omitted.) Id. at 783-784 (2).

---

[17] *Green v. Home Depot U.S.A.*, 277 Ga. App. 779, 783 (2) (627 SE2d 836) (2006).
[18] *Wallace v. Greene County*, 274 Ga. App. 776, 783 (2) (618 SE2d 642) (2005).

Here, Benefit's president forwarded a written request to the county on August 27, 2003, in which Benefit requested five categories of documents regarding the rebid of the county's insurance following the throwing out of Benefit's and the other bids.[19] The county failed to respond to the request within three days and indeed did not make any of the requested documents available until October 1, and even then made available only one of the five categories. After the present suit was filed in June 2004, three of the other categories were made available, and the county indicated that the remaining category described documents not in existence.

The Open Records claim of the present action seeks Benefit's attorney fees under OCGA § 50-18-73 (b) for the county's failure to comply with the Open Records Act without substantial justification. To obtain such attorney fees, Benefit must meet a two-prong test. First, it must show that although the county produced the documents after the lawsuit was filed, the county violated the Open Records Act by not producing them before the suit was filed. *Wallace*, supra, 274 Ga. App. at 781 (2). Second, if a violation did in fact occur, Benefit must show that the county lacked substantial justification for the violation. Id.

Here, the trial court denied summary judgment on this claim, finding that the first prong was met in that the county failed to respond to the August 27 request within three business days. In light of the county's obligation to affirmatively respond within the three-business-day period, we agree. See *Wallace*, supra, 274 Ga. App. at 783 (2). Regarding the second prong, we further agree with the trial court that some evidence showed the county lacked substantial justification in doing so, particularly in light of the county not producing any of the documents until October 1 and in light of the county not providing all requested records even after Benefit's courtesy correspondence of October 2. Because the county did not bother to produce the remaining documents until after the civil action was filed in June 2004, and because the county has further failed to explain this dilatory conduct in any evidence submitted with its summary judgment motion, some evidence shows that the county's violation lacked substantial justification. See id. at 784 (2). The trial court did not err in denying summary judgment on this claim.

---

[19] The county's argument that the request sought "information" rather than documents is belied by the language of the request.

## Case No. A06A2150

8. Currahee and Holt appeal the trial court's denial of their motion for summary judgment on Benefit's claim of negligent misrepresentation. Benefit alleges that in the consulting contract with the county, Currahee and Holt had negligently represented that Holt was a properly licensed insurance counselor and a person who would be totally objective in his evaluation of the bids. Claiming that these two representations were false, Benefit avers that it relied on them in preparing its bid and that it was injured as a result. We hold that because Benefit was unaware of these contractual representations when it made its bid, it necessarily did not rely on them and therefore cannot recover on a claim for negligent misrepresentation. Accordingly, we reverse the trial court's order denying summary judgment.

*Robert & Co. Assoc. v. Rhodes-Haverty Partnership*[20] established the elements of the tort of negligent misrepresentation:

> [O]ne who supplies information during the course of his business, profession, employment, or in any transaction in which he has a pecuniary interest has a duty of reasonable care and competence to parties who rely upon the information in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended that it be so used. This liability is limited to a foreseeable person or limited class of persons for whom the information was intended, either directly or indirectly.

The key here is that the plaintiff must "rely upon the information" that was supplied. *Robert & Co. Assoc.*, supra, 250 Ga. at 681-682. Indeed, *White v. BDO Seidman, LLP*[21] expressly held that plaintiffs "must show they *actually* and justifiably relied on the representations in [defendant's] reports before they may recover for their . . . losses under a common law negligent misrepresentation theory of recovery." (Emphasis supplied.)

Here, the evidence is undisputed that prior to submitting its bid on the RFP, Benefit did not receive nor was it aware of the terms of the consulting agreement between Currahee and the county. Rather, the most Benefit's representative could say was that he "assumed" Holt was a licensed counselor and would be objective based on that representative's understanding of the industry, and not based on any awareness of representations made by Currahee in the consulting

---

[20] *Robert & Co. Assoc. v. Rhodes-Haverty Partnership*, 250 Ga. 680, 681-682 (300 SE2d 503) (1983).

[21] *White v. BDO Seidman, LLP*, 249 Ga. App. 668, 673 (1) (549 SE2d 490) (2001).

agreement or otherwise. Nothing in the RFP received by Benefit gave any indication of the licensing status of Holt or Currahee or of a promise by him or Currahee to be objective. Nor does Benefit claim that any oral representations were made to this effect.

Because Benefit cannot show this essential element of a cause of action for negligent misrepresentation, its claim must fail. *White*, supra, 249 Ga. App. at 673 (1). Compare *Salmon v. Pearson & Assoc.*[22] (plaintiff was told of defendant's false representations before closing and relied thereon in consummating purchase). Accordingly, the trial court erred in denying Currahee and Holt's motion for summary judgment on this claim.

In summary, we affirm summary judgment in favor of the county on two of the three claims alleged against the county and further affirm the denial of summary judgment on the third claim asserting an Open Records claim for attorney fees, which is the only claim now remaining pending against the county in the court below. We affirm summary judgment in favor of Currahee and Holt on three of the four claims against them and reverse that portion of the court's order denying them summary judgment on the fourth claim (negligent misrepresentation), which leaves no claims remaining pending against Currahee and Holt.

*Judgments affirmed in Case Nos. A06A2148 and A06A2149. Judgment reversed in Case No. A06A2150. Mikell and Adams, JJ., concur.*

DECIDED OCTOBER 10, 2006 —

*Orr & Orr, E. Wycliffe Orr, Sr., Spence Johnson*, for Benefit Support, Inc.

*Weener & Nathan, Philip H. Weener, Cordon L. Olson, Freeman, Mathis & Gary, Christopher E. Parker, Amy M. Combs, Stewart, Melvin & Frost, William H. Blalock, Jr.*, for Hall County.

*Sommers, Scrudder & Bass, Glenn S. Bass, Chiaka U. Adele*, for Currahee Health Benefits Solutions, Inc. et al.

---

[22] *Salmon v. Pearson & Assoc.*, 214 Ga. App. 11, 12-13 (446 SE2d 762) (1994).