**FIFTH DIVISION
MCFADDEN, P. J.,
BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**October 26, 2023**

# In the Court of Appeals of Georgia

A23A0955. LAMBERT et al. v. DMRT, LLC et al.

MARKLE, Judge.

After its application for a special use permit to build an outdoor deck was denied, the nightclub DMRT, LLC d/b/a Mixx Atlanta and its partial owner, Kishen Devaraj (collectively, "Mixx"), sued Earl Lambert, Jr. and the Ansley Park Civic Association, Inc. ("APCA") for breach of contract, unjust enrichment, tortious interference with business relations, punitive damages, and attorney fees. Lambert and APCA (collectively, "Appellants") appeal from the trial court's denial of their motion to strike the complaint pursuant to the Anti-SLAPP statute, OCGA § 9-11-11.1, and, in the alternative, to dismiss for failure to state a claim under OCGA § 9-

11-12 (b) (6).[1] Because this matter involves Appellants' protected speech, and Mixx has not shown a probability of prevailing on its claims, we conclude that the complaint was subject to dismissal under OCGA § 9-11-11.1. We therefore reverse the trial court's judgment.

"A trial court's ruling on an anti-SLAPP motion to strike is subject to de novo review, and the pleadings and affidavits submitted by the parties are considered in the light most favorable to the nonmoving party." (Citations omitted.) *Johnson v. Cordtz*, 366 Ga. App. 87 (878 SE2d 603) (2022).

So viewed, the record shows Devaraj is part owner of Mixx, a nightclub and restaurant, that abuts the Beltline and is adjacent to residential properties in the Ansley Park neighborhood of Atlanta. After receiving multiple noise complaints from neighborhood residents in 2015, a municipal court judge ordered Mixx to mediate with APCA to attempt to resolve the noise issues. Consequently, in 2016, Mixx and APCA entered into an agreement ("the Agreement") regarding planned renovations to the nightclub.

---

[1] The trial court granted the motion as to Mixx's additional claim for intentional infliction of emotional distress. Mixx did not file a cross-appeal as to this claim; thus, we do not address it in this appeal. See *Thunderbolt Harbour Phase II Condo. Assn. v. Ryan*, 326 Ga. App. 580, 583 (2) (b) (757 SE2d 189) (2014); OCGA § 5-6-38.

The Agreement incorporates both a design plan prepared by Kevin Maher ("the "Maher Plan"), showing the addition of an enclosed patio at the rear of the club, as well as acoustical design recommendations performed by Harold Merck ("the Merck Plan"). The Agreement provides:

> APCA will support, speak in favor of, and recommend approval by the City of Atlanta of any such application by or submitted on behalf of Mixx to the City of Atlanta for the use, maintenance, and/or development of [the club] set forth in the Maher Plan and Merck Plan. Mixx shall include a copy of this Agreement executed by APCA and Mixx and the conditions set forth herein, including, but not limited to, the Maher Plan and Merck Plan, with the filing of any such application and, further, stipulate and consent to the reference and inclusion of the same in any such approval(s) by the City of Atlanta for the development of [the club]. . . . To the extent the conditions of this Agreement are more restrictive than or are not reflected in any conditions applied to [the club] and/or Mixx by the City of Atlanta, the conditions of this Agreement will control.

The Agreement further provides:

> [S]hould Mixx seek any future renovation and/or construction of [the club] . . . . [,] APCA shall in good faith fairly and fully consider, and not unreasonably oppose, any such future renovation and/or construction proposed by Mixx that is consistent with this Paragraph so long as . . . such future renovation and/or construction does not interfere with, does

not hinder, and is not inconsistent with the Maher Plan, Merck Plan, or the intent and provision of this Agreement.

The Agreement also contains the following merger clause: "This Agreement contains the sole and entire agreement of the parties hereto with respect to the transaction contemplated hereunder and no representation, inducement, promise or agreement, parole or written, between the parties hereto not incorporated herein shall be of any force or effect."

Mixx's enclosed patio was ultimately permitted, and construction was completed in 2018. In March 2021, Deveraj informed APCA's president that Mixx intended to seek a special use permit for the addition of an open air dining patio and deck to the rear of the property. That same night, Lambert, an APCA member, whose home is located approximately 200 feet from Mixx's rear property line, called law enforcement and made a noise complaint after hearing loud music emanating from Mixx's direction. Thereafter, the officer issued Mixx a citation for violating the noise ordinance.

The following month, Mixx applied to the City of Atlanta for a special use permit to build the outdoor dining deck. APCA opposed the application at a public hearing, specifically pointing to the absence of any noise abatement plan. The

4

Department of City Planning's Zoning Administrator recommended the Zoning Review Board deny the application, noting that "proposed measures to mitigate noise to the adjacent residential property is (sic) not sufficient." The Administrator also noted that Mixx had not performed a sound mitigation plan as requested by APCA. In September 2021, the Atlanta City Council unanimously voted to deny Mixx's application for the special use permit.

Thereafter, Mixx sued Lambert and APCA, alleging that Lambert fabricated the noise complaint; APCA relied on the resulting citation as grounds to oppose the special use permit for the outside deck; and APCA's opposition to the permit breached the Agreement. As relevant to this appeal, Mixx brought claims for breach of contract and unjust enrichment against APCA; and claims for tortious interference with business relations, punitive damages, and attorney fees under OCGA § 13-6-11 against both defendants. The defendants filed a motion to strike the complaint pursuant to the Anti-SLAPP statute, OCGA § 9-11-11.1, and, in the alternative, to dismiss for failure to state a claim under OCGA § 9-11-12 (b) (6). Following a hearing, the trial court denied the motion, and Lambert and APCA appeal.

1. Appellants first argue that the trial court erred by finding that the Anti-SLAPP statute did not apply because (a) their activities were protected and (b) Mixx did not meet its burden to show a probability of prevailing on its claims. We agree.

> A "SLAPP," or "Strategic Lawsuit Against Public Participation," is a meritless lawsuit brought not to vindicate legally cognizable rights, but instead to deter or punish the exercise of constitutional rights of petition and free speech by tying up its target's resources and driving up the costs of litigation. The anti-SLAPP statute allows a defendant to make a motion to strike such a frivolous action as an avenue for ending the suit quickly, summarily, and at minimal expense.

(Citations and punctuation omitted.) *Johnson*, 366 Ga. App. at 87. However, we must construe the statute broadly in furtherance of the General Assembly's declared purpose "to encourage participation by the citizens of Georgia in matters of public significance and public interest through the exercise of their constitutional rights of petition and freedom of speech." OCGA § 9-11-11.1 (a); *Barnwell v. Trivedi*, 366 Ga. App. 168, 170 (881 SE2d 16) (2022).

Whether a claim should be struck under the anti-SLAPP statute involves a two-part test.[2]

---

[2] OCGA § 9-11-11.1 (b) (1) provides:

First, the court must decide whether the party filing the anti-SLAPP motion has made a threshold showing that the challenged claim is one "arising from" protected activity. If so, the court must decide whether the plaintiff "has established that there is a probability that the plaintiff will prevail on the claim." But while viewing the evidence in this light, the court must also take into account the substantive evidentiary and legal standards that apply to the case.

*Johnson*, 366 Ga. App. at 90 (1); *Barnwell*, 366 Ga. App. at 170; see also OCGA § 9-11-11.1 (b) (1), (b) (2) (in determining whether a claim should be struck, "the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based").

With this framework in mind, we turn to the merits of Appellants' argument on appeal.

(a) Protected activity.

---

A claim for relief against a person or entity arising from any act of such person or entity which could reasonably be construed as an act in furtherance of the person's or entity's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern shall be subject to a motion to strike unless the court determines that the nonmoving party has established that there is a probability that the nonmoving party will prevail on the claim.

7

OCGA § 9-11-11.1 (c) defines the categories of protected activities, to include:

(1) Any written or oral statement or writing or petition made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) Any written or oral statement or writing or petition made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) Any written or oral statement or writing or petition made in a place open to the public or a public forum in connection with an issue of public interest or concern; or (4) Any other conduct in furtherance of the exercise of the constitutional right of petition or free speech in connection with a public issue or an issue of public concern.

Here, Mixx takes issue with Lambert's noise complaint to law enforcement, and APCA's opposition to its application for a special use permit in the course of municipal proceedings. Without question, Lambert's statements to police, regarding a potential violation of a noise ordinance, were made "in connection with a public issue or an issue of public concern," and are thus protected under OCGA § 9-11-11.1 (c) (4). See *Annamalai v. Capital One Financial Corp.*, 319 Ga. App. 831, 833 (1) (738 SE2d 664) (2013) (Under former version of OCGA § 9-11-11.1, defendants' "statements to police or statements made in furtherance of an ongoing investigation

8

regarding [plaintiff's] alleged criminal activity. . . . represents the type of speech that the anti-SLAPP statute is designed to protect.").

Similarly, APCA's statements and activity in opposition to Mixx's permit were before a legislative body, regarding an issue under review in "a public forum in connection with an issue of public interest or concern"; and, as such, were protected under OCGA § 9-11-11.1 (1) through (4). See *Morgan v. Mainstreet Newspapers*, 368 Ga. App. 111, 116-117 (2) (a) (889 SE2d 217) (2023) ("[G]iven that . . . the matters discussed in the [newspaper] article concerned both zoning and code violations . . . and were considered by both the city attorney and the [city council] for months, we also agree with the trial court that this article is connected with a public issue and/or an issue of public concern pursuant to OCGA § 9-11-11.1 (c) (4)."); *Settles Bridge Farm v. Masino*, 318 Ga. App. 576, 579 (3) (734 SE2d 456) (2012) (Under former anti-SLAPP statute, "alleged statements to the city manager, concerning a zoning matter . . . constituted statements made in connection with an issue of public interest or concern."); *Metzler v. Rowell*, 248 Ga. App. 596, 598-599 (1) (547 SE2d 311) (2001) (Under former anti-SLAPP statute, attorney's letter regarding litigation of a zoning matter was "in connection with an issue . . . under

9

consideration by a judicial body" and was thus protected speech.) (punctuation omitted).

In short, Lambert's and APCA's acts are paradigms of protected activity. Accordingly, the trial court erred by finding that Appellants had not made the threshold showing under the Anti-SLAPP statute. See *Johnson*, 366 Ga. App. at 90 (1); *Barnwell*, 366 Ga. App. at 170; OCGA § 9-11-11.1 (b) (1).

(b) Probability of prevailing on the claims.

Appellants next argue that the trial court erred by concluding that there was a probability Mixx would prevail on its claims. Again, we agree.

> The second step of the anti-SLAPP analysis requires a determination as to whether the plaintiff has established that there is a probability that [it] . . . will prevail on the claim. To meet this burden, [Mixx] must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited. Only a claim that satisfies both prongs of the anti-SLAPP statute — i.e., that arises from protected activity and lacks even minimal merit — is a SLAPP that is subject to being stricken.

(Citation and punctuation omitted.) *Johnson*, 366 Ga. App. at 91 (1).

> In this phase, the trial court is charged with considering

10

the pleadings and evidentiary submissions of both the plaintiff and the defendant; though the court does not weigh the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim. In making this assessment, it is the court's responsibility to accept as true the evidence favorable to the plaintiff. In this regard, the merits of the plaintiff's claim are evaluated using a summary-judgment-like procedure at an early stage of the litigation.

(Citations and punctuation omitted.) *American Civil Liberties Union v. Zeh*, 312 Ga. 647, 653 (1) (c) (864 SE2d 422) (2021). With these principles in mind, we turn to the merits of Mixx's claims.[3]

(i) Breach of contract against APCA.

---

[3] To the extent Mixx contends that the anti-SLAPP statute is not applicable here because there are no claims for defamation, we are unpersuaded. Notably, the statutory language places no limit on the type of claim to which it applies. See, e.g., OCGA § 9-11-11.1 (b) (1) (providing, generally, that "*[a] claim for relief*" arising from the exercise of a protected activity is subject to a motion to strike under the Code section) (emphasis supplied); see also *Geer v. Phoebe Putney Health System*, 310 Ga. 279, 283 (2) (849 SE2d 660) (2020) ("[T]he coverage of the anti-SLAPP statute extends to abusive litigation that seeks to chill exercise of constitutional rights to free speech and petition based upon claims such as defamation, invasion of privacy, breach of contract, and intentional interference with contractual rights and opportunities arising from speech and petition of government.").

In the complaint, Mixx alleged that APCA breached the Agreement by opposing the construction of the outdoor deck. Appellants contend that Mixx cannot show a probability of prevailing on this claim because the plain language of the contract reflects no such agreement.

"The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." (Citation and punctuation omitted.) *Overlook Gardens Properties v. Orix, USA,* 366 Ga. App. 820, 823 (1) (a) (884 SE2d 433) (2023).

> On appeal, we review the trial court's construction of a contract de novo. The cardinal rule of contract construction is to ascertain the intention of the parties. Contract interpretation is guided by three steps: First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury. In the face of ambiguity, we must look to the entirety of the agreement to determine the intent of the parties. Indeed, it is axiomatic that contracts must be construed in their entirety and in a manner that permits all of the terms contained therein to be consistent with one another. Pursuant to OCGA § 13-2-2 (4), "[t]he construction

which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part."

(Citations omitted.) *Freeman Capital Group v. Drury*, 367 Ga. App. 843, 847 (1) (887 SE2d 812) (2023); *Overlook Gardens Properties*, 366 Ga. App. at 823-824 (1) (a).

Here, the language of the Agreement is clear and unambiguous. As set forth above, the Agreement incorporates the Merck noise mitigation plan, as well as the Maher design plan, which shows only the addition of an enclosed patio — not an outdoor deck.[4] Under the clear terms of the Agreement, APCA agreed to support Mixx's zoning applications for the development of the club only to the extent "set forth in the Maher Plan and Merck Plan." Regarding future renovations and development of the club, APCA agreed to consider them in good faith and fairness, so long as they are "not inconsistent with the Maher Plan, Merck Plan, or the intent and provisions of this Agreement." In other words, the Agreement did not obligate

---

[4] Notably, the Agreement provides that "the permitting, construction, use, and maintenance of [the club] shall be conditioned upon and consistent with and shall not vary from" the incorporated Maher design plan and Merck acoustical recommendations.

13

APCA to categorically support any and all of Mixx's future renovations. Because the proposed construction of the outdoor deck is inconsistent with the enclosed patio shown on the Maher plan, and it is undisputed that Mixx did not obtain an accoustical design study for the deck to demonstrate consistency with the Merck plan, APCA did not breach the clear terms of the Agreement by opposing Mixx's application for the special use permit to build the outdoor deck. See *Freeman Capital Group*, 367 Ga. App. at 847 (1); *Overlook Gardens Properties*, 366 Ga. App. at 824-825 (1) (a) (i) (developer's claim for breach of contract against loan processor failed where loan documents did not contain any guarantee by processor to provide best available interest rates); see also OCGA § 13-2-3.

Mixx points to certain affidavits to show that APCA had agreed to the future construction of the outdoor deck to enable Mixx to recoup the costs associated with the construction of the enclosed patio. However, even assuming there was such a promise, it was nullified by the Agreement's comprehensive merger clause, as set forth above. See *Overlook Gardens Properties*, 366 Ga. App. at 827 (1) (a) (ii) ("[I]f the contract contains a merger clause, a party cannot argue they relied upon representations other than those contained in the contract.") (citation omitted); *Pinnock v. Kings Carlyle Club Apts.*, 348 Ga. App. 72, 76 (1) (a) (819 SE2d 515)

14

(2018) (fraudulent inducement claim barred by merger clause). Moreover, parol evidence is not admissible where, as here, the contract is unambiguous. *Overlook Gardens Properties*, 366 Ga. App. at 827 (1) (a) (ii); OCGA § 13-2-2 (1). Mixx, therefore, cannot show a probability of prevailing on this claim.

(ii) Unjust enrichment against APCA.

Appellants contend that Mixx cannot show a probability of prevailing on its claim for unjust enrichment because the Agreement is a valid contract.

As we have explained,

> [t]he theory of unjust enrichment is basically an equitable doctrine that the benefitted party equitably ought to either return or compensate for the conferred benefits when there was no legal contract to pay. The doctrine applies when, as a matter of fact, there is no legal contract. Where there is an express contract, there can be no recovery based upon an unjust enrichment theory.

(Citations and punctuation omitted.) *Marvin Hewatt Enterprises v. Butler Capital Corp.*, 328 Ga. App. 317, 322-323 (4) (761 SE2d 857) (2014).

Notably, Mixx asserted this claim in the alternative to its breach of contract claim. As addressed above, the Agreement is a valid contract setting forth Mixx's and APCA's respective obligations. As such, "as a matter of law the remedy of unjust

15

enrichment is not available to [Mixx], and it cannot elect that remedy as an alternative to breach of contract, as it seeks to do." *Marvin Hewatt Enterprises*, 328 Ga. App. at 323 (4).[5]

(iii) Tortious interference with business relations against Appellants.

Appellants contend that Mixx cannot show a probability of prevailing on this claim because it cannot establish that Appellants acted improperly.

The elements of an actionable claim for tortious interference with business relations are:

> (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

---

[5] Moreover, under these facts, we fail to see how APCA was unjustly enriched. See *Price & Co. v. Majors Mgmt., LLC*, 363 Ga. App. 427, 436 (3) (b) (i) (869 SE2d 587) (2022) ("For unjust enrichment to apply, the party conferring the labor and things of value must act with the expectation that the other will be responsible for the cost.") (citation and punctuation omitted).

(Citation omitted.) *United Sciences v. Kellett*, 368 Ga. App. 690, 695 (890 SE2d 103) (2023).

It is well-settled that a plaintiff cannot establish a defendant acted improperly or without privilege if the defendant is not a stranger to the contractual or business relationship at issue. *United Sciences*, 368 Ga. App. at 695. As we have explained,

> to sustain a claim for intentional interference with business relations, the tortfeasor must be an intermeddler acting improperly and without privilege. To be liable for tortious interference with business relations, one must be a stranger to the business relationship giving rise to and underpinning the contract. But, where a defendant had a legitimate interest in either the contract or a party to the contract, he is not a stranger to the contract itself or to the business relationship giving rise thereto and underpinning the contract. Nor does the fact that a defendant did not sign the contract preclude a finding that he was no stranger to the contract. In sum, all parties to an interwoven contractual arrangement are not liable for tortious interference with any of the contracts or business relationships. Moreover, the applicability of the "stranger doctrine" is the same for tortious interference with a business relationship as for tortious interference with a contractual relationship. For this reason, proof that the defendant was no stranger to the business relations at issue is fatal to the plaintiff's claim of tortious interference with business relations.

17

(Citation and punctuation omitted.) *Benefit Support, Inc. v. Hall County*, 281 Ga. App. 825, 830 (3) (637 SE2d 763) (2006).

At the outset, we note — as the trial court also noted — that the complaint does not set out the factual basis for this claim. The evidence Mixx submitted in opposition to Appellants' motion to strike did not clarify the grounds for this claim. Under this prong of the anti-SLAPP analysis, Mixx bears the burden to show a probability of prevailing on its claims, which they have consequently failed to do in this instance. See *Johnson*, 366 Ga. App. at 90 (1); *Barnwell*, 366 Ga. App. at 170; see also OCGA § 9-11-11.1 (b) (1).

Regardless, the claim fails because neither APCA nor Lambert are "strangers" to the Agreement. See *Benefit Support*, 281 Ga. App. at 830 (3). APCA was a party to the Agreement. At the time the Agreement was executed, Lambert was a dues-paying member of APCA, and his home is adjacent to the rear property line of the club; he thus "had a legitimate interest in either the contract or a party to the contract," regardless of the fact that he was not a signatory to it. Id.; see also *United Sciences*, 368 Ga. App. at 695 ("[W]here a defendant has a financial interest in one of the parties to the contract or in the contract, the defendant is not a stranger to the contract or business relationship, even though he is not a signatory to the contract.")

18

(citations and punctuation omitted). As such, Mixx cannot meet its burden to show a probability of prevailing on this claim.

(iv) Punitive damages and attorney fees.

Finally, given our conclusions above, Mixx cannot show a probability of prevailing on its derivative claims for punitive damages and attorney fees. See *Popham v. Landmark American Ins. Co.*, 340 Ga. App. 603, 612 (4) (798 SE2d 257) (2017) ("[A]wards of punitive damages and attorney fees are derivative of underlying claims, where those claims fail, claims for punitive damages and attorney fees also fail.").

Because Appellants' activities were protected, and Mixx failed to satisfy its burden to show a probability of prevailing on its claims, the trial court erred in denying Appellants' motion to strike pursuant to the anti-SLAPP statute. Accordingly, we reverse the trial court's judgment.

2. In light of our conclusion above, we do not reach Appellants' remaining enumeration of error regarding the dismissal of the complaint for failure to state a claim under OCGA § 9-11-12 (b) (6).

*Judgment reversed. McFadden, P. J., and Brown, J., concur.*