[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-14102

Non-Argument Calendar

_____

WASEEM DAKER,

                                        Plaintiff-Appellant,

*versus*

CHIEF LEGAL AFFAIRS OFFICER, VALDOSTA STATE UNIVERSITY,

VALDOSTA STATE UNIVERSITY,

A Comprehensive University of the University System of Georgia,

BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 7:19-cv-00159-WLS-TQL

_____

Before WILSON, JILL PRYOR, and LUCK, Circuit Judges.

PER CURIAM:

Waseem Daker, a Georgia prisoner proceeding *pro se*, appeals the district court's *sua sponte* dismissal of his amended complaint. The district court liberally construed the amended complaint as asserting claims under 42 U.S.C. § 1983, as well as state-law claims under Georgia's Open Records Act, O.C.G.A. §§ 50-18-70 *et seq*. The district court dismissed the claims, concluding that Daker failed to state a claim for relief under § 1983 and that it lacked subject-matter jurisdiction to review the state-law claims. Daker then filed a motion under Federal Rule of Civil Procedure 59(e) to vacate the district court's order dismissing his claims, which the court denied.

On appeal, Daker argues that the district court erred in dismissing his claims and in denying his Rule 59(e) motion. After careful consideration, we conclude that the district court did not err in dismissing Daker's claims and that we lack appellate jurisdiction to review the denial of the Rule 59(e) motion. Accordingly, we affirm in part and dismiss in part.

## I.

This case arises out of records requests that Daker submitted under Georgia's Open Records Act. We begin by reviewing the relevant portions of the Act. We then discuss Daker's requests and the litigation that followed.

## A.

In the Open Records Act, the Georgia "General Assembly . . . declare[d] that there is a strong presumption that public records should be made available for public inspection without delay." O.C.G.A. § 50-18-70(a). The Act directs that "[a]ll public records shall be open for personal inspection and copying, except those which by order of a court of this state or by law are specifically exempted from disclosure." *Id.* § 50-18-71(a). It defines "public record" to include

> all documents, papers, letters, maps, books, tapes, photographs, computer based or generated information, data, data fields, or similar material prepared and maintained or received by an agency or by a private person or entity in the performance of a service or function for or on behalf of an agency or when such documents have been transferred to a private person or entity by an agency for storage or future governmental use.

*Id.* § 50-18-70(b)(2).

Upon receipt of an open records request, an agency[1] generally must "produce for inspection" responsive records within "three business days of receipt of a request." *Id.* § 50-18-71(b)(1)(A). When an agency is unable to make the records available within this timeframe, it must "provide the responsive records or access thereto as soon as practicable." *Id.* "At the time of inspection, any person may make photographic copies or other electronic reproductions of the records using suitable portable devices brought to the place of inspection." *Id.* § 50-18-71(b)(1)(B). In some circumstances, "an agency may, in its discretion, provide copies of a record in lieu of providing access to the record." *Id.*

In response to a request, an agency "may impose a reasonable charge for the search, retrieval, redaction, and production" of records. *Id.* § 50-18-71(c)(1). When an agency provides copies of a record in lieu of providing access to the record, it may "charge a fee for the copying." *Id.* § 50-18-71(c)(2). The Act sets forth the maximum that the agency may charge for providing such copies. *Id..*

A party who believes that an agency wrongfully denied a records request may bring an action "against persons or agencies having custody of records open to the public . . . to enforce compliance with the provisions" of the Act. *Id.* § 50-18-73(a). If a court finds that the person or agency "acted without substantial

---

[1] The Act defines "agency" to include, among other entities, "[e]vey state department, agency, board, bureau, office, commission, public corporation, and authority." O.C.GA. §§ 50-14-1(a)(1); 50-18-70(b)(1).

justification," it may award the plaintiff "reasonable attorney's fees." *Id.* § 50-18-73(b). If the court finds that the person or agency "negligently violate[d]" the Act, it may impose a civil penalty.[2] *Id.* § 50-18-74(a); *see Cardinale v. Keane*, 869 S.E.2d 613, 647–49 (Ga. Ct. App. 2022) ("[T]he award of a civil penalty under the Open Records Act is a matter committed to a trial court's discretion.").

## B.

While incarcerated at the Valdosta State Prison, Daker sent a records request to Valdosta State University, a public university in Georgia. He requested copies "of all songs in rotation or on the playlist or in the song bank" of the university's radio station. Doc. 11 at ¶ 14 (internal quotation marks omitted).[3]

Eschol Lee Davis, Jr., the school's chief legal affairs officer, responded to Daker's request. Davis sent Daker copies of the radio station's written playlists. Davis also treated the request as seeking "copies of the song audio files themselves." *Id.* at ¶ 16. Davis responded that the university would make the audio files "available for inspection" with a pre-arranged appointment. *Id.* But he stated that the university would not make copies of the audio files for

---

[2] For a first violation, a court may impose a civil penalty of up to $1,000. O.C.G.A. § 50-18-74(a). For each additional violation committed within a 12-month period from the date the initial civil penalty was imposed, a court may impose a civil penalty of up to $2,500 per violation. *Id.*

[3] "Doc." numbers refer to the district court's docket entries.

Daker because the audio files were "protected under copyrights held [by] their respective owners." *Id.*

Upon receiving Davis's response, Daker submitted a second request, again seeking copies of "all songs in rotation or on the playlist or in the song bank" for the university's radio station. *Id.* at ¶ 17. He wrote that because he was incarcerated and unable to come to Davis's office, "inspection in person is *not* an adequate substitute for copying or duplication." *Id.* at ¶ 23 (emphasis in original). He demanded that the university "copy or duplicate" the requested audio files. *Id.* Daker also maintained that, regardless of whether the songs have been copyrighted, the university was required to provide him with copies under the Open Records Act. He also asserted that many of the songs played on the radio station "have not been copyrighted." *Id.* at ¶ 19 (emphasis omitted).

Davis responded to Daker's second request. Again, he refused to provide Daker with copies of the requested audio files. Davis stated that the audio files of the songs were "subject to federal copyright." *Id.* at ¶ 24.

Daker, proceeding *pro se*, then filed this lawsuit in federal district court against Davis, the university, and the Board of Regents of the University System of Georgia (collectively the "defendants").[4] In the amended complaint, Daker set forth the history of

---

[4] Daker paid the filing for the lawsuit and did not seek to proceed *in forma pauperis*.

21-14102              Opinion of the Court              7

the records requests in which he sought audio files of 4,803 songs. He claimed that the defendants violated the Open Records Act when, after each of his records requests, they refused to provide him with "a copy of each of the 4,803 songs." *Id.* at ¶¶ 29, 32.

In the amended complaint, Daker claimed that the defendants were liable under 42 U.S.C. § 1983 because the withholding of the audio files violated the First and Fourteenth Amendments to the Constitution. He sought a declaration that the defendants' refusal to provide copies of the audio files violated the Constitution and the Open Records Act. He requested an injunction requiring the defendants to provide him a copy of each requested song. He also demanded nominal, compensatory, and punitive damages as well as $9,600,000 in civil penalties under the Open Records Act.

A magistrate judge conducted an initial screening of Daker's amended complaint and recommended dismissal.[5] The magistrate judge determined that Daker failed to state a claim for relief under § 1983 because his allegations did not establish any violation of the First or the Fourteenth Amendment.

---

[5] When a prisoner files a complaint in a civil action "seek[ing] redress from a governmental entity or officer or employee of a governmental entity," the district court shall review the complaint and "dismiss the complaint, or any portion" thereof, if it "is frivolous, malicious, or fails to state a claim upon which relief may be granted" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(a)–(b).

The magistrate judge liberally construed Daker's amended complaint as raising state-law claims under Georgia's Open Records Act. The magistrate judge recommended that the district court dismiss these claims for lack of subject matter jurisdiction because they did not arise under federal law and there was no complete diversity of the parties.

Daker objected to the magistrate judge's recommendation. He argued that the allegations in his amended complaint were sufficient to state a claim that the defendants had violated the First and Fourteenth Amendments. He also asserted that the court had subject matter jurisdiction over his state-law claims because the defendants would be raising a defense to those claims based on federal copyright law.

The district court overruled Daker's objections and adopted the magistrate judge's recommendation. The district court determined that Daker failed to state a claim that the defendants violated the First or the Fourteenth Amendment. And the district court concluded that it lacked subject matter jurisdiction over Daker's state-law claims.

After the district court entered this order, Daker filed a notice of appeal as well as a motion under Federal Rule of Civil Procedure 59(e) to vacate the district court's order. The district court denied the motion. Daker did not file a new or amended notice of appeal after the district court entered the order denying his Rule 59(e) motion.

## II.

"A district court's decision to dismiss for failure to state a claim under 28 U.S.C. § 1915A is reviewed *de novo*[.]" *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006). "A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief." *Jones v. Bock*, 549 U.S. 199, 215 (2007).

We review *de novo* questions regarding a district court's subject matter jurisdiction. *Absolute Activist Value Master Fund Ltd. v. Devine*, 998 F.3d 1258, 1264 (11th Cir. 2021).

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). We may "affirm on any basis supported by the record," even if the district court did not actually rely on that basis. *MidAmerica C2L Inc. v. Siemens Energy Inc.*, 25 F.4th 1312, 1331 (11th Cir. 2022).

## III.

Daker argues on appeal that the district court erred in dismissing his § 1983 claims for failure to state a claim for relief and his state-law claims for lack of subject matter jurisdiction. He also argues that the district court erred when it denied his Rule 59(e) motion. We address each argument in turn.

### A.

Daker argues that the allegations in his amended complaint were sufficient to state a claim under § 1983 that the defendants violated either the First or the Fourteenth Amendment. We reject his argument.

1.

We begin with Daker's § 1983 claims alleging that the defendants violated the First Amendment. The Supreme Court of the United States has recognized that the First Amendment "protects the right to receive information and ideas." *Stanley v. Georgia*, 394 U.S. 557, 564 (1969). According to Daker, when the defendants denied his records requests in "violation of state law," their actions "impermissibly constricted the flow of information or ideas" and thus violated the First Amendment. Appellant's Br. at 40 (internal quotation marks omitted).

We assume for purposes of this appeal that if the defendants denied Daker's records requests in violation of the Open Records Act, then the defendants violated Daker's First Amendment rights. We nevertheless conclude that Daker failed to state a claim for relief because the allegations in the amended complaint establish that Davis's responses to Daker's requests complied with the Act; thus, there was no violation of state law.

An agency fulfills its statutory obligations under the Act when it makes the responsive public records available for inspection. We know this because the plain language of the Act directs an agency to make responsive records available "for inspection."

O.C.G.A. § 50-18-71(b)(1)(A). As Georgia courts have recognized, an official "fully complie[s] with his obligations under the Act" by notifying the requesting party "that the records would be made available for inspection." *Felker v. Lukemire*, 477 S.E.2d 23, 25–26 (Ga. 1996); *see Garland v. State*, 865 S.E.2d 533, 538 (Ga. Ct. App. 2021) (explaining that government agency discharges its obligations when it produces "for inspection all responsive records").[6]

The allegations in Daker's complaint reveal that the defendants fulfilled this obligation under the Act. Upon receiving Daker's requests for the songs played on the university's radio station, Davis responded by telling Daker that the responsive records were available for inspection.[7]

Daker argues that Davis's offer to make the recordings available for inspection was insufficient under the Act because he was incarcerated and thus unable to perform the inspection himself. According to Daker, for an incarcerated person, an agency cannot satisfy its duties under the Act by making the requested records available for inspection and instead must prepare and send the incarcerated person copies of the responsive records. But we see nothing in

---

[6] It is true that the Act generally gives an agency discretion to provide copies of the responsive records in lieu of making them available for inspection. *See* O.C.G.A. § 50-18-71(b)(1)(B), (c)(2). But the fact that an agency has *discretion* to provide copies does not mean that it *must* do so.

[7] We assume for purposes of this appeal that Valdosta State University qualifies as an "agency" and the audio recordings qualify as "public records" under the Open Records Act. *See* O.C.G.A. § 50-18-70(b).

the text of the Act that imposes such an obligation, and Daker has identified no case or other authority recognizing such an obligation.[8]

We conclude that the defendants fulfilled their obligations under the Open Records Act when Davis responded in writing to Daker's request that the requested recordings were available for inspection. *See Felker*, 477 S.E.2d at 25. Because the allegations in the amended complaint, taken as true, do not establish that the defendants violated the Act, we conclude that Daker failed to state a claim that the defendants violated the First Amendment.

**2.**

We now turn to Daker's § 1983 claims alleging Fourteenth Amendment violations. The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Daker argues that because the Open Records Act uses "mandatory language" that requires state agencies to make public records available for inspection, it "create[s] a liberty interest in access to public records." Appellant's Br. at 20. Daker claims that the defendants' wrongful denials of his requests in violation of the

---

[8] We also note that nothing in the Act requires Daker to be the individual who inspects the records. Even though Daker is incarcerated, he could arrange for another person to inspect them on his behalf. *See Deal v. Coleman*, 751 S.E.2d 337, 347 (Ga. 2013).

Act deprived him of this liberty interest and violated the Four-teenth Amendment.

We assume for purposes of this appeal that the Act created a liberty interest in access to public records. We also assume that if the defendants wrongfully denied Daker's records request in viola-tion of the Act, then they violated the Fourteenth Amendment.

We nevertheless conclude that Daker failed to state a claim for relief. The amended complaint's allegations establish that the defendants fulfilled their obligations under the Act because Davis notified Daker that the responsive records were available for in-spection. Because the allegations, taken as true, show there was no violation of the Act, Daker failed to state a claim for a violation of the Fourteenth Amendment.

## B.

Daker also argues that the district court erred in dismissing his state-law claims for lack of subject matter jurisdiction. We dis-agree.

For a federal court to have subject matter jurisdiction over a claim, there must be: "(1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1305 (11th Cir. 2016) (internal quotation marks omitted). Daker argues that the district

court had jurisdiction over his Open Records Act claims under the statutory grant set forth at 28 U.S.C. § 1338.[9]

Section 1338 states that district courts "shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights." 28 U.S.C. § 1338(a). Jurisdiction under § 1338 extends "to those cases in which a well-pleaded complaint establishes" that federal copyright law "creates the cause of action." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988); *MDS (Can.) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833, 841 (11th Cir. 2013). A case raising a federal copyright-law "defense does not . . . arise under" copyright law, "even if the defense is anticipated in the plaintiff's complaint." *Christianson*, 486 U.S. at 809 (internal quotation marks omitted).

Daker claims that there is jurisdiction under § 1338. He argues that his state-law claims arise under copyright law because he anticipates that the defendants will raise a defense under copyright

---

[9] Daker does not argue on appeal that there is subject matter jurisdiction over his state-law claims based on federal question jurisdiction pursuant to 28 U.S.C. § 1331 or diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Even if he had raised these arguments, we cannot say that there is subject matter jurisdiction on either basis because Daker's claims relying on the cause of action created by the Open Records Act, O.C.G.A. § 50-18-73, do not arise under federal law and there was not complete diversity of citizenship.

law. But as *Christianson* makes clear, we look to Daker's complaint to determine whether federal copyright law creates his causes of action. *See id.* And the amended complaint shows that Georgia's Open Records Act, not federal copyright law, creates the cause of action for these claims. *See* O.C.G.A. § 50-18-73 (creating cause of action to "enforce compliance with" the Open Records Act). We thus cannot say that there is jurisdiction under § 1338 and conclude that the district court lacked subject matter jurisdiction over Daker's state-law claims.[10]

## C.

The final issue Daker raises on appeal is whether the district court erred when it denied his Rule 59(e) motion in which he asked the district court to reconsider its order dismissing his claims. We lack appellate jurisdiction to review this issue.

"A party intending to challenge an order disposing of any motion listed in Rule 4(a)(4)(A) . . . must file a notice of appeal, or an amended notice of appeal . . . within the time prescribed by this Rule measured from the entry of the order disposing of the last such remaining motion." Fed. R. App. P. 4(a)(4)(B)(ii). A motion to

---

[10] Given that Daker brought § 1983 claims, which did arise under federal law, the district court had discretion to exercise supplemental jurisdiction over Daker's state-law claims. *See* 28 U.S.C. § 1367(a); *Silas v. Sheriff of Broward Cnty.*, 55 F.4th 863, 865 (11th Cir. 2022). But after dismissing Daker's § 1983 claims, the district court "decline[d]" to exercise supplemental jurisdiction. Doc. 22 at 19. We cannot say that this decision was an abuse of discretion. *See Silas*, 55 F.4th at 865–67.

alter or amend judgment under Rule 59 is one of the motions listed in Rule 4(a)(4)(A). As a result, to appeal the denial of his Rule 59(e) motion, Daker had to file a new notice of appeal within 30 days after the district court entered the order denying that motion. *See Weatherly v. Ala. State Univ.*, 728 F.3d 1263, 1271–72 (11th Cir. 2013) (concluding we lacked appellate jurisdiction to review denial of Rule 59 motion when the appellant failed "to file a separate notice of appeal or amend the previously filed notice of appeal"). Because Daker failed to file a new notice of appeal or amend his notice of appeal after the district court denied his Rule 59(e) motion, we lack appellate jurisdiction to review his challenge to the denial of this motion. We dismiss this portion of the appeal.

## IV.

For the above reasons, we affirm in part and dismiss in part.

**AFFIRMED IN PART AND DISMISSED IN PART.**[11]

---

[11] We DENY Daker's motion to certify questions to the Georgia Supreme Court.